## MABON v. MILLER et al.

(Supreme Court, Appellate Division, First Department.    March 13, 1903.)

1. CORPORATIONS—DIRECTORS—BREACH OF TRUST—LIABILITY IN EQUITY
   A suit in equity for a discovery and accounting will lie at the instance of a receiver against the directors of a corporation for their wrongful acts in dissipating, misappropriating, and diverting the corporate property until it becomes apparently insolvent, and its stock worthless.

2. SAME—SUIT FOR ACCOUNTING—RECOVERY OF DAMAGES.
   In a suit in equity by a receiver against the directors of a corporation for an accounting, damages may be recovered for the fraudulent acts of the directors which result in a waste and misappropriation of the corporate property.

3. SAME—SUIT FOR ACCOUNTING—JOINDER OF DIRECTORS.
   A single suit against the several directors of a corporation for their wrongful misappropriation and dissipation of corporate property in pursuit of a common fraudulent purpose, may be maintained in equity by the receiver, though the directors are not equally involved nor equally liable.

Appeal from Special Term, New York County.

Action by John S. Mabon as receiver of the Ongley Electric Company, against Jacob W. Miller and others. From an interlocutory judgment overruling demurrer to the complaint, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, INGRAHAM, and LAUGHLIN, JJ.

Jabish Holmes, Jr., for appellants.
Theodore L. Frothingham, for respondent.

HATCH, J. This action was brought by the receiver of the Ongley Electric Company, a New Jersey corporation, against the defendants, its directors, for the alleged wasteful and wrongful management by them of its corporate affairs, on account of which judgment is demanded for a discovery and accounting. The complaint avers that the plaintiff is a resident of the state of New Jersey, and was duly appointed receiver of the Ongley Electric Company, a corporation existing under the laws of the state of New Jersey; that the defendants are residents of the state of New York, and are all directors of the said Ongley Electric Company. The capital stock of the Ongley Electric Company consisted of 2,500 shares of the par value of $100 each. All of said shares were duly issued, and were full paid. The board of directors consisted of seven members. In May, 1892, the said company held in its treasury 1,179 shares of its capital stock, which had been contributed to the company by its stockholders for the purpose of raising additional working capital. At that time the assets of the company consisted of various patents and patent rights invented by the defendant Charles E. Ongley. In May, 1892, George B. Hopkins, acting for himself and associates, commenced an examination of the business, property, and patent rights of the said company, with the view of purchasing for himself and associates the capital stock of the company in the treasury, as aforesaid. After this examination had made some progress, the said Hopkins stated to the officers of the company that he would not consider the purchase of the capital stock unless he could acquire a controlling interest therein. Thereupon the stockholders agreed to contribute 321 additional shares of its capital stock, in order that a total of 1,500 shares might be available for purchase by the said Hopkins, if he should so determine. In November, 1892, the said Hopkins and h'., associates purchased the said 1,500 shares of stock at $60 per share, making $90,000 for the whole thereof, paying therefor $52,500 in cash and $37,500 in three promissory notes of $12,500 each, made by the said George B. Hopkins and one William P. Dixon, jointly, to the order of the said company, dated November 15, 1892, and payable in 30, 60, and 90 days, respectively. On November 16, 1892, at a meeting of the directors of the said Ongley Electric Company, four of the directors resigned at the request of said Hopkins, when he and three of his associates—William P. Dixon, Jacob W. Miller, and E. B. Densler—were elected directors in their places. The remaining directors of the company at that time were Thomas W. Robertson, Jacob B. Underhill, and T. De Witt Thompson. At said meeting Hopkins was elected vice president, Robertson president, and Underhill secretary and treasurer. On the 17th day of December, 1892, Densler resigned, and the defendant George J. Schoeffel was, by request of said Hopkins, elected a director in his place, and at the same time Schoeffel was appointed general manager of said company at a salary of $5,000 per year. On February 7, 1893, at the annual meeting of said company, the following named persons were elected directors: Defendants Jacob W. Miller, George B. Hopkins, William P. Dixon, Charles E. Ongley, George J. Schoeffel, and also Thomas W. Robertson and Michael W. Devine. Hopkins was elect-

ed president, Robertson vice president, and Schoeffel secretary and treasurer. From the time when Hopkins and his associates assumed control of the company, as aforesaid, their management of the same was prejudicial to its best interest and to the interests of the minority stockholders, and was in violation of the fiduciary obligations due from said Hopkins and associates to said company as directors thereof. The said three notes given by Hopkins and Dixon to the company, and intended to provide its working capital, were not paid when due, nor was payment thereof required by the board of directors, controlled, as aforesaid, by the said Hopkins and his said associates. A valid claim against the company was refused payment by Hopkins and his said associates, acting as directors, whereby a suit was brought against the company. A controversy was raised between the said Hopkins and associates and said Thomas W. Robertson, whereby Robertson, in order to protect his personal interest, was obliged to resign his position as vice president and director of the company, and to bring suit against it upon a note of the company held by him. At a meeting of the directors in April, 1893, the resignation of said Thomas W. Robertson and Michael W. Devine was accepted, and the vacancies created by their resignations have never been filled, and from that time to the present only those defendants have been the directors of said company.

The complaint then avers with much particularity and at considerable length the acts which the said defendants, acting as officers and directors of the corporation, have done and omitted. In general, these acts consist in permitting the corporation to be sued upon fictitious debts and claims, and allowing judgments to pass against it by default, and its property to be seized under execution. The complaint also avers that the directors made personal claim for services rendered in and about the affairs of the company which had no existence in fact; that actions were brought thereon against the company, upon which defaults were made, and judgments permitted to be entered. The complaint also avers that the defendants procured the organization of another company to take over all the property, assets, and business of the Ongley Electric Company, and to deprive it of its property; that, after the new company was formed, but before there was a transfer of the property of the Ongley Electric Company, an injunction was procured at the instance of the minority owners of the stock of the Ongley Electric Company, restraining the defendants from causing such transfer to be made; that said injunction still continues to be and remain in force, but that the defendants have evaded and substantially disregarded the same by procuring the Ongley Company to take possession of the factory, machinery, stock, and patents of the Ongley Electric Company, and carry on business with said property in its name, without, however, making formal transfer of the property; that the defendants are directors and officers of both companies, and control the same; that no compensation has been made by the Ongley Company for the use of the property, and that thereby the Ongley Electric Company is deprived of the beneficial use of the whole of its property. The complaint further avers that on October 15, 1894, a majority of the

board of directors of the Ongley Electric Company passe.1 a resolution authorizing the said notes of $37,500, given as a part of the purchase price of the stock of the Ongley Electric Company by the said Hopkins and Dixon, be canceled, and surrendered to the makers, for the reason that there was failure of consideration therefor. Numerous other acts upon the part of the defendants, acting as officers and directors of the company, are averred at length, from which it appears that there has been a deliberate, wrongful, and unlawful mismanagement of the affairs of the company, with the result that substantially all of the property and effects of the Ongley Electric Company have been wasted, stolen, squandered, dissipated, or misappropriated by the defendants, acting as officers and directors of such company. The complaint concludes by averring that:

"The defendants, as directors of said Ongley Electric Company, wholly failed and neglected to perform their official duties as such directors. They did not give their care and oversight to the business and affairs of said company, but neglected the same. They did not administer the affairs of said company in an honest, careful, or prudent manner, but, on the contrary, they negligently and wrongfully suffered and permitted the money, property, and effects of said company to be stolen, wasted, squandered, and misappropriated. They negligently and wrongfully omitted to collect obligations lawfully due to said company. They permitted, instigated, and took part in litigations against said company, hostile to its interests, and calculated to obstruct the conduct of its business and the due settlement of its affairs; and generally so managed the property and affairs of said company as to make the same apparently insolvent, and to render the stock of said company apparently worthless, and to delay and defraud the lawful creditors of said company. The several acts and omissions of the said defendants hereinbefore set forth, and their other acts and omissions incident thereto and connected therewith, were done and omitted by them in pursuance of a fraudulent scheme to avoid their own just obligations and indebtedness to said Ongley Electric Company and to its other stockholders and creditors, and to divert and appropriate to their own use and advantage the property, assets, rights, and good will of said company, and to effect a dissolution of said company without due process of law, and to enable said defendants, or some of them, to organize other companies to carry on the business of said Ongley Electric Company under other names, thereby rendering valueless the stock of said Ongley Electric Company, and cheating and defrauding the other stockholders and creditors thereof. Said acts and omissions were in violation of law and in breach of the trust reposed in said defendants as directors of said Ongley Electric Company."

The complaint then demands judgment:

"(1) That said defendants, and each of them, may be compelled to disclose and turn over to the plaintiff all of the books, accounts, records, contracts, and other papers belonging to said Ongley Electric Company. (2) That said defendants, and each of them, may be compelled to account for their official conduct in the management and disposition of the property and assets of said Ongley Electric Company. (3) That said defendants, and each of them, may be compelled to pay to the plaintiff, for the benefit of said company and its creditors and stockholders, the amount of all moneys, with interest, and the full value, with interest of all properties, assets, and effects of said company which the said defendants, or any of them, have acquired for themselves, or any of themselves, or transferred to others, or lost or wasted by a violation of their duties. (4) That said defendants, and each of them, may be compelled to pay to the plaintiff, for the benefit of the said company and its creditors and stockholders, the amount of the damages sustained by said company by reason of the wrongful acts and omissions of the defendants hereinbefore set forth;" and for such other relief as may be proper.

The defendants demurred to the complaint, and take nearly four pages of the record in specifying the grounds. The learned counsel for the appellants has relieved us of the necessity of condensing the whole of this matter by doing it himself. He states the ground of demurrer in his brief to be:

"(1) That the complaint does not state facts sufficient to constitute a cause of action. (2) That two or more causes of action have been improperly united therein, to wit, a cause of action affecting all five of the defendants with a cause of action affecting only four of the defendants, and these two causes of action with a cause of action affecting only three of the defendants, and these three causes of action with a cause of action affecting only two of these defendants."

The principle relied upon in support of the first ground of demurrer is found expressed in O'Brien v. Fitzgerald, 143 N. Y. 377, 38 N. E. 371; Dykman v. Keeney, 154 N. Y. 483, 48 N. E. 894; Higgins, as Receiver, v. Tefft, 4 App. Div. 62, 38 N. Y. Supp. 716; and other cases. This claim proceeds upon the theory that the complaint states a cause of action, not in equity, but at law; that the relation between the corporation and its directors is that of principal and agent, and not that of trustee and cestui que trust. The Court of Appeals held, as well as this court, in the cases above cited, that the actions therein sought to be maintained were not actions in equity, but were actions at law to recover damages for negligence, and therefore an equitable action could not be maintained. It would serve no useful purpose at this time to point out the distinction in detail which exists between the present action and the complaints which were the subject of examination in these cases. Such distinction, if stated, may not be so plain that he who runs may read; but the court of last resort in many pages of opinion has stated it, and it may be sought for therein. Mr. Justice Ingraham, in O'Brien v. Fitzgerald, 6 App. Div. 509, 39 N. Y. Supp. 707, affirmed on opinion below, 150 N. Y. 572, 44 N. E. 1126, has probably stated such distinction with as much clearness as the question itself permits. Therein he says:

"In the case of Higgins, as Receiver, v. Tefft, 4 App. Div. 62, 38 N. Y. Supp. 716, we sought to place a distinction between the liability of a trustee to account in equity and the liability of a trustee in an action at law upon the allegation as to the relation that existed between the trustee and the cestui que trust, or the property of the trust which had become lost or wasted; holding that an action for an accounting would lie where it was alleged that the relation of the trustee to the property was such that a court of equity could charge him with the amount that he had received, and compel him to account to the court for the disposition which had been made of such property. The fact that a trustee bears such a relation to the property that he is chargeable with it or its proceeds when called upon for it, either by his cestui que trust or by the court, is a basis for an action for an accounting in equity. If there is no sum of money with which the director can be charged upon the proof of his relation to the property, he cannot be called to account for any particular property, and thus an action for an accounting will not lie. Where his liability to his cestui que trust, or to the corporation of which he is a director or trustee, is not to account for specific property, but for damages because of his negligent act in the performance of his duty, a different principle arises as to his liability from that of a case where, in consequence of his relation to the property of the trust, he is bound to show what disposition

of that property has been made, being chargeable with the value of the property." Page 514, 6 App. Div., and page 709, 39 N. Y. Supp.

There seems to be a mistaken notion in some minds that the relation which exists between directors of a corporation and the corporation is that of principal and agent. This is not true. Such relation is, and always was, as to the property of the corporation, fiduciary in character; and, while not strictly that of trustee and cestui que trust, yet it partakes of such nature. The agency of the directors rests solely in their dealings with third persons, when they represent the corporation as its agents; but in dealings with the corporation they act in a fiduciary capacity for the shareholders, as it is to their care that the shareholders, acting through the corporate entity, intrust the control of its property and the management of its business. Duncomb v. N. Y., H. & N. R. R. Co., 84 N. Y. 190. Therein Finch, J., said:

"It is not intended to deny or question the rule that, whether a director of a corporation is to be called a trustee or not in a strict sense, there can be no doubt that his character is fiduciary, being intrusted by others with powers which are to be exercised for the common and general interests of the corporation, and not for his own private interests, and that he falls, therefore, within the doctrine by which equity requires that confidence shall not be abused by the party in whom it is reposed, and which it enforces by imposing a disability, either partial or complete, upon the party intrusted, to deal on his own behalf in respect to any matter involving such confidence."

Redhead v. Parkway Driving Club, 148 N. Y. 471, 42 N. E. 1047.

It is clear from the complaint in this action that what is sought to be accomplished by it is to compel these defendants, acting as officers and directors of the corporation whom the receiver represents, to account for their wrongful acts in dissipating, misappropriating, and diverting the property of the corporation. In such relation, and for such acts, they are subject to the same responsibilities as attach to trustees, and may be called upon in equity to account for their acts in the disposition of the property and the discharge of their trust. Damages which arise from fraudulent acts, which result in a waste or misappropriation of the property, either for their own benefit or for the benefit of others, is an incident to such accounting, and it is no objection that the complaint in such action demands damages resulting from their official misconduct. Bostworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667. This complaint, therefore, states a good cause of action in equity.

It is no objection to the complaint that the defendants may not be all equally culpable, or equally liable to respond in damages or otherwise to account for the property which has been misappropriated. The principle upon which such an action is based rests in the fact that the defendants occupy a fiduciary relation, and in the discharge of their duties represent the corporation. Their dealings in such relation have reference to the property and management of the same intrusted to their care. There may be many breaches, but they are of a single duty. There may be different trustees, but they deal with the same matter. There may be different degrees of participation in the disposition of the property, but the dealings are

had with the property of the corporation, and the duty in such dealing is owed by the trustee to it. Consequently, the act which furnishes the ground of action is the breach of duty; and an accounting is asked of the property affected by such breach, together with the damages which flow therefrom. The whole cause of action is, therefore, single; and the fact that all of the directors may not have acted at a given time, or have been guilty of the same waste, or involved in the same measure of damage inflicted upon the corporation, is of no consequence. To the extent that they have been guilty of wrongful acts whereby property has been dissipated, for such acts and property they may be called upon to account; and variance in degree of acts, or culpability, or property wasted, or damage sustained, does not make different causes of action. Equity lays hold of the entire transaction, and is invested with power in a single equitable action to submit each and every action of the directors to scrutiny, and award such judgment as is consonant with the facts and will remedy the wrong, and may determine therein the liability of each director for his culpable act. Bostworth v. Allen, supra; People v. Tweed, 63 N. Y. 194; Porter v. International Bridge Co., 163 N. Y. 79, 57 N. E. 174. The averments contained in the present complaint show a state of facts from which may be found a common design and purpose upon the part of the defendants, acting in their own behalf and in disregard of the rights of the corporation, to squander, destroy, and divert the property of the corporation, and utterly despoil it; and that they have succeeded in such purpose. Under such circumstances, where a common purpose and design are established, overt acts in furtherance of the common design, whether committed by one or all, may be given in evidence, whether they be all present or not; and this result follows however the action may be characterized. The power of equity to lay hold of such a condition is not dependent upon nomenclature. It is sufficient for the exercise of its powers if it appear that the several acts constitute a breach of trust; that they are connected together and relate to the same matter; and whether there be one transaction or several transactions, whether the act resulting in the waste be by all the directors or only a part, the result is the same, as the action seeks to enforce the rights of the corporation to the property, and to compel the trustees to render an account of their transactions. The entire transaction or transactions relate to the same matter, have the same subject, are connected together, and in equity constitute a single transaction.

If these views be sound, it follows that the interlocutory judgment should be affirmed, with costs, with leave to the defendants to withdraw demurrer and answer over within 20 days, on payment of the costs in this court and in the court below. All concur.