tionality of that part of the section which seeks to limit stockholders' liability to the debts of the corporation payable "within two years," etc. That provision is not applicable, however, to the facts of this case, and, if void, may be eliminated without affecting the valid provisions of the section. The rule is that if, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. People ex rel. Augerstein v. Kenney, 96 N. Y. 294, 303. Constitutional and unconstitutional provisions may be expressed in the same section, or even in the same sentence, and yet be distinct and separable, so that the former may stand though the latter fall. Suth. Stat. Const. § 296. The section under consideration is composed of separable parts, and, after eliminating the provision which may be void, a tangible, constitutional part remains, capable by its terms of being carried into effect consistent with the intent of the Legislature which enacted the statute.

The remaining grounds upon which the stockholders challenge the complaint are so closely involved with the one discussed that it is unnecessary to treat them separately.

The defendant trust company assigns the pendency of another action between the same parties for the same cause as a ground of demurrer. In the plaintiff's present complaint is incorporated his complaint in the prior action. Both state the same cause of action against the trust company, the only difference being that in the one the plaintiff makes the trust company the sole defendant, and in the other he unites the stockholders. The trust company is not to be subjected to this double litigation.

The demurrers interposed are well taken, must be sustained, with costs.

Demurrer sustained, with costs.

---

(49 Misc. Rep. 347.)

YOUNG v. EQUITABLE LIFE ASSUR. SOCIETY OF THE UNITED STATES et al.

(Supreme Court, Special Term, Saratoga County. February, 1906.)

1. CORPORATIONS—STOCKHOLDER'S ACTION—ELEMENTS OF CAUSE OF ACTION.
   In an action by a stockholder against directors to recover money alleged to be due by the directors to the corporation, the plaintiff must prove that a cause of action exists in favor of the corporation, and that the facts are such as to entitle her to sue in its place.

2. SAME.
   In an action by a stockholder in behalf of the corporation against directors thereof, a complaint, alleging facts which show the directors to have been guilty of actual wrong and to have failed to look after the interests of the corporation, states a cause of action.

3. ACTION—MISJOINDER OF CAUSES OF ACTION.
   In an action by a stockholder against the directors to recover sums claimed to be due the corporation, the fact that part of the defendants are claimed to be liable because of their wrongful acts, and a part

because of failure to perform their duties, does not render the causes of action improperly joined.

4. INSURANCE — ACTION AGAINST INSURANCE COMPANY — APPLICATION OF STATUTE.

Insurance Law, Laws 1892, p. 1958, c. 690, § 56, providing that no judgment for an accounting, or decree or order restraining or enjoining the prosecution of an insurance company's business or interfering therewith, shall be made, does not prevent the bringing by a stockholder and policy holder in an insurance company of an action to compel the directors thereof to repay to the company funds wasted by them.

5. SAME—DEMAND.

A policyholder or a stockholder in an insurance company has a right, without making a demand upon the corporation, to bring an action to compel it to collect money due to it.

6. ACTION—MISJOINDER OF CAUSES OF ACTION.

Where, in an action by a stockholder and policy holder in an insurance company, the only cause of action stated rested on the ground that plaintiff was a stockholder, the further allegation that she was also a policy holder did not result in an improper joinder of causes of action.

Action by Mary S. Young against the Equitable Life Assurance Society of the United States and others. Heard on demurrer to the complaint. Demurrer overruled.

Edgar T. Brackett, for plaintiff.

Guggenheimer, Untermyer & Marshall (Louis Marshall, of counsel), for defendant Hyde.

H. T. KELLOGG, J.  The plaintiff by her complaint, among other things, alleges that the Equitable Life Assurance Society of the United States is a stock corporation engaged in making insurance upon lives; that its stock is divided into 1,000 shares of $100 each; that the holders thereof are entitled to dividends yearly of 7 per cent. only; that earnings thereabove are to be accumulated; that its business is conducted upon the mutual plan; that the plaintiff is the holder and owner of 3 shares of its capital stock; that the plaintiff is a policy holder therein; that she owns three policies which entitle her to be paid, in the year 1921, three gold interest-bearing bonds of the society in the principal sum of $2,500, together with deferred cash dividends consisting of her full share of surplus profits as determined by the society's actuaries; that the same are in full force; that the defendants other than the society are the directors thereof, and have been for the past three years; that they have negligently and improperly performed their duties as such directors, and have knowingly suffered to be done such wrongful, illegal, and improper acts that the society's assets have been wasted thereby; that said acts, among other things, are these:  That the defendant Hyde, as vice president, has received annually a salary of $100,000, without services of value performed therefor or other consideration given; that he has improperly employed the funds of the society for his own personal use, to pay for extensive travel indulged in for his own pleasure, to pay for his maintenance in Paris and elsewhere, to give expensive dinners to ambassadors and others, to pay for masquerade balls, and to maintain personal employés, secretaries, stenographers, and retainers, all for his own personal benefit solely; that he has made large profits by underwriting bond issues and causing such

bonds to be sold to the society, and by renting the society's buildings · at less than their rental value to other corporations in which he was interested, personally profiting thereby; that the defendant Schiff has sold bonds and securities to the society, and caused them to be bought by it at large profit to himself; that the defendant Harriman has done the same, and caused the society's funds to be invested in corporations in which he was largely interested, to his own personal profit; that the defendant Tarbell has improperly sold pretended renewal rights in policies to the society at large personal profit to himself; that the defendant Depew has received annually the sum of $25,000 from the society without any services rendered therefor; that the defendants McIntyre and Winthrop have received from the society, the former $30,000 and the latter $10,000, without services rendered or value given; that various other defendants named have sold securities to the society which they had underwritten, and caused them to be bought by it at large profit to themselves; that the foregoing acts of waste were permitted to be done by the defendant directors and were accomplished through their neglect; that damage to the society has resulted therefrom; that the society is under the control and management of these defendants, who are the same persons by whom the waste was occasioned; that the plaintiff has no adequate remedy at law. Judgment is demanded that waste has been committed, and that the defendants account therefor and pay into the treasury the amounts for which they are liable. To this complaint the defendant Hyde demurs, on the grounds that the complaint does not state facts sufficient to constitute a cause of action, that causes of action are improperly united therein, and that the plaintiff has not legal capacity to maintain the suit.

This is an action in which the plaintiff seeks to recover in the right of a corporation and in its behalf, certain sums of money owing to it by its directors, claiming the same right possessed by stockholders in ordinary business corporations to maintain suit where the corporation has itself improperly failed to bring the same. In such an action, the plaintiff must establish, first, a cause of action in favor of the corporation; second, facts entitling her to sue in its stead. Kavanaugh v. Commercial Trust Company, 181 N. Y. 121, 73 N. E. 562. Has the plaintiff stated a cause of action in favor of the corporation? The commission of actual wrong by some of the defendant directors, with resulting damage to the society, has been stated in such unmistakable terms that no doubt remains of their liability to the society, conceding the facts alleged to be true. This action, however, is not brought against such offenders only, but against the entire body of directors, all of whom are charged with responsibility for the damage directly occasioned by the active misdeeds of a few, on the ground that the same were by them negligently permitted and suffered to be done. All the directors of a corporation owe to it a duty of care, attention, and watchfulness. For damage resulting from their lack of care and inattention to duty and to the affairs of the corporation, with the management of which they are intrusted, they are liable. Brinckerhoff v. Bostwick, 88 N. Y. 52; Hanna v. Lyon, 179 N. Y. 107, 71 N. E. 778. That liability does not accrue merely because they have performed some act, and performed it carelessly, but rather because of a total

failure to act at all. Complete inaction by those owing the duty of activity is in itself the ground of liability. It is difficult to see how a pleader may allege facts in detail, showing such inactivity, the very negative of things done, or how he may plead at all, unless it be sufficient for him to plead broadly the conclusion, if it be such, that directors have been inattentive and inactive and have, therefore, failed to prevent, and so permitted, the things to be which have caused injury. To this effect is the complaint of this plaintiff. In my view of it, it sets forth, with sufficient definition, a liability on the part of all the defendant directors to the corporation for neglect of duty and damage within the principles laid down in the cases cited.

Nor do I think that causes of action in favor of the society have been improperly united. Under this complaint, it may be true that some of the defendants are liable for faults of commission, and some because of a duty omitted to be performed. This is an action in equity, not alone because it is an action for an accounting, but, if for no other reason, because the plaintiff's right to sue, if it exists at all, exists by the grace of a court of equity only. It was said in O'Brien v. Fitzgerald, 143 N. Y. 377, 38 N. E. 371:

"In support of that idea the case of Brinckerhoff v. Bostwick, 105 N. Y. 567, 12 N. E. 58, is pressed upon our attention as indicating that the present action must be regarded as of an equitable character. * * * In this the action is by the corporation against its delinquent directors; in the other it was by a stockholder who could not sue at law but was compelled to go into equity to obtain his relief, and whose right of action was wholly and purely of an equitable character."

The authorities uniformly hold that this derivative action is equitable in character. Being such, the fact that there may be a varying liability on the part of these several defendants, all of whom are directors charged with breach of duty, furnishes no basis for the claim that causes of action have been improperly joined. Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667; Mabon v. Miller, 81 App. Div. 10, 80 N. Y. Supp. 979.

The serious question arising here is whether or not this plaintiff has shown facts entitling her to bring this action in the right of the corporation. It is objected that she has made no demand upon the corporation to bring the action in its own name. "The action to recover such losses * * * should in general be brought in the name of the corporation; but, if it refuses to prosecute, the stockholders, who are the real parties in interest, will be permitted to sue in their own names, making the corporation a defendant, and that course of proceeding is also allowed if it appears that the corporation is still under the control of those who must be made the defendants in the suit." Brinckerhoff v. Bostwick, supra. A suit may be brought without demand "where the persons who committed the wrongful acts continue to be the directors of the corporation." Hanna v. Lyon, 179 N. Y. 107, 71 N. E. 778. The persons against whom liability is charged, either because of misfeasance or nonfeasance, to wit, all of the defendant directors, are alleged to be the present directors of the society having its affairs under their control. A demand to sue would have been futile, as a demand upon the defendants to sue themselves. It was not necessary

for the plaintiff to make such a demand. Brinckerhoff v. Bostwick, supra; Hanna v. Lyon, supra. We arrive at the interesting question, therefore, whether this plaintiff, a policy holder and shareholder in an insurance company, organized as a stock company to do business upon the mutual plan, enjoys the character of a stockholder in an ordinary business corporation, and as such may, having established a corporate cause of action and excused a failure to make demand, maintain action thereon in her own name.

It is asserted that, without regard to statute, under the decision in Uhlman v. New York Life Ins. Co., 109 N. Y. 421, 17 N. E. 363, 4 Am. St. Rep. 482, an action by a policy holder against an insurance company for an accounting is not maintainable. Even were such the case, this action would not be affected thereby; for it is not an action to obtain an accounting from an insurance company. The Uhlman Case, however, did not decide what is claimed for it. That was an action brought by the holder of a deferred dividend policy, upon the maturity of his policy, to recover his equitable share of the surplus promised by the policy. The plaintiff failed to prove any wrongdoing or any wrongful apportionment of the surplus by the officers of the society, claiming that he was entitled to an accounting on the sole ground that the account was complicated. Because of such failure of proof, it was held that the plaintiff could have no accounting. It was distinctly stated in that case that such a policy holder might obtain redress in court, if proof of wrongful and unjust apportionment were first made. Whether this remedy would be an action at law or one in equity was not stated. The judge writing the opinion in that case made a somewhat extended statement, pointing out the evils which would result if, upon the bare demand of a policy holder, an insurance company should be compelled to make a judicial accounting to him of the management of its affairs throughout the term of his policy. But it was not decided that an accounting could in no case be had by a policy holder.

Shortly after the rendering of this decision, the act which is now section 56 of the insurance law (Laws 1892, p. 1958, c. 690) was passed. The purpose of the act was "to firmly establish and effectuate the decision" in the Uhlman Case. Greeff v. Equitable Life Assurance Society, 160 N. Y. 19, 54 N. E. 712, 46 L. R. A. 288, 73 Am. St. Rep. 659. It reads as follows:

"No order, judgment or decree providing for an accounting or enjoining, restraining or interfering with the prosecution of the business of any domestic insurance corporation or appointing a temporary or permanent receiver thereof shall be made or granted otherwise than upon the application of the Attorney General, on his own motion or after his approval of a request in writing therefor of the superintendent of insurance, except in an action by a judgment creditor or in proceedings supplementary to execution."

This act was upheld as constitutional in Swan v. Mutual Reserve Fund Life Ass'n, 155 N. Y. 9, 49 N. E. 258. That was an action by a policy holder in an assessment life insurance company to obtain a distribution of the reserve fund, ratably, among all policy holders, in accordance with the provisions of the company's contract of insurance, the complaint wherein alleged a wrongful accumulation and mis-

appropriation of such fund. It was held that the same was an action for an accounting, and therefore not maintainable because of the provisions of the act above quoted; the approval of the Attorney General not having been obtained.

In Greeff v. Equitable Life Assurance Society of the United States, 160 N. Y. 19, 54 N. E. 712, 46 L. R. A. 288, 73 Am. St. Rep. 659, a deferred dividend policy holder, upon the maturity of his policy, brought an action to recover his equitable proportion of the company's surplus earnings, setting forth facts in his complaint showing, or purporting to show, the share thereof to which he was equitably entitled and alleging an inequitable apportionment by the society. It was held that the action, regarded as an action at law, was not maintainable, a determination by the society of the amount distributable being a condition precedent to the bringing of such an action, upon the analogy of a stockholder suing for dividends, and that the amount equitably to be credited to such a policy holder could not, in any event, be ascertained without an accounting, which, under section 56 of the insurance law, was not open to a policy holder, unless upon the consent of the Attorney General. Thus was the decision in the Uhlman Case "firmly established and effectuated." The right, saved by that decision to a policy holder; to obtain in judicial proceedings an equitable distribution of surplus earnings, upon proof of an inequitable apportionment, whether through an action at law, or an action sounding in equity, because of the Greeff Case, which bars the legal action, and of the statute which bars the accounting, now no longer exists. It is unnecessary to make extended comment upon the result which has now been reached. It is enough to say that by these decisions the point has finally been settled that no suit for an accounting is maintainable against an insurance company by a policy holder. The decisions, however, go no further than to so hold.

The action brought by this plaintiff, however, is not an action by a policy holder to recover upon her policy, as was the case in the Swan and Greeff actions, but a suit to compel the directors of an insurance corporation to pay into the corporate treasury the amount of waste of corporate funds created by them. In this respect the action is totally different from the actions in the two cases mentioned, and those cases are not authorities upon the question whether section 56 of the insurance law prohibits the bringing of this action. It will be noticed that this ill-worded statute does not, in terms, bar the institution of any suit by a policy holder. What is barred is an order, judgment, or decree of a particular kind. It might well have been held that a complaint, otherwise good, no matter what the relief prayed for might be, would stand, and that the granting of the relief only would be denied, if, precedent thereto, demand therefor was not made by the Attorney General. Yet, on the other hand, a complaint is generally bad if the judgment prayed for will not of necessity follow from the facts alleged, granted their truth. This was the view in the Swan Case. The only relief there demanded was a decree for an accounting by the corporation. For such a decree, the Attorney General's consent not appearing, the complaint did not make a case and was, therefore, a

bad complaint. It would seem, however, that this construction should properly be limited to those cases where the relief demanded is precisely the relief which is barred. If it appears that a complaint does not ask such relief—if, upon the facts stated, a recovery may perhaps be had without a resort to orders and decrees of the prohibited kind, then, plainly, the one and only time to refuse such relief is when it is subsequently applied for, and a complaint not asking for such relief is a good complaint. Because the order or decree prohibited is a possibility, as the case develops, is no reason for holding a complaint bad when, of necessity, such relief may never follow or be demanded and a case is stated for relief which is wholly different.

The orders and decrees prohibited are of three kinds: First, a decree or judgment for an accounting; second, a decree or order restraining or enjoining the prosecution of an insurance company's business; third, a decree or order interfering with the prosecution of such business.

As to the first class, I take it that the accounting intended is an accounting by the corporation. In the Swan Case the accounting demanded was of that character. Did it mean an accounting by directors, then the corporation itself might not pursue a delinquent director without the approval of the Attorney General. The accounting in the Uhlman Case, the decision in which the statute was intended to effectuate, was an accounting by the corporation. Here no accounting on the part of the corporation is asked. This plaintiff is not in reality antagonistic to her corporation. She is not asking relief or pursuing a claim against it. She is asking only that the corporation obtain recovery for itself from the defendant directors and an accounting from them. Since she demands no accounting from the corporation to herself, no prohibited accounting under the statute is being sought for.

As to the second class, no decree or order restraining or enjoining the prosecution of the corporation's business is called for by the complaint. If this suit is successful, all its benefits will go to the corporation, and no burden will be imposed upon it. In reality, the corporation is the plaintiff, and its directors the defendants. The nominal plaintiff is a mere instigator of the action. The only injunction prayed for is one restraining the commission of waste by the society's directors. This will not interfere with the society's business, except to aid it.

As to the third class, it does not of necessity follow from this complaint that any order or decree, interfering with the business of the society, will ever result from the maintenance of this action. No intermediate relief is prayed for by this complaint. It does not now appear that such relief will ever be demanded. If an order, such as an order to examine the society's books, be hereafter applied for, then may arise the occasion for its refusal on the ground of the statutory prohibition. Nor do I see what manner of decree or judgment interfering with the prosecution of the society's business will so certainly prove the goal of this action that the complaint itself is now bad. The call of the complaint is for a judgment compelling delinquent directors to account and pay into the treasury of the society the amount of waste occasioned by them. The amount of their liability may be established upon the

trial by evidence gathered from sources other than the books of the society, from the admissions of the defendants or otherwise, in which case the decree to follow will be a judgment for a sum of money to be paid, and no interference whatever will result. If an interlocutory judgment for an accounting be granted, the directors, not the society, will account. Any intereference resulting will be incidental only. It will not be such an intereference with "the prosecution in the business" of the society, as was under consideration in the Swan and Greeff Cases. In those cases, not only did the plaintiffs demand an account of the receipts and disbursements of their companies and of the business done by them throughout a long period of years, but they attacked and proposed to change the methods of business pursued, so that the accumulations of surplus and reserve might be distributed upon a changed plan of apportionment satisfactory to themselves. "Prosecution" of business means its continuance. The plaintiffs in those suits sought to prevent a continuance of business along the habitual lines of management adopted. This is no such case. From an interlocutory decree of accounting in this case, no direct interference or stoppage of business can result. It might become necessary, as a consequence, to have reference to the society's books and papers, in order to determine the sums of money which some of the directors have unlawfully received and are owing. But that would be an incidental inconvenience which might occur whenever the society itself sought to collect a debt. It would arise in actions by the society itself to collect from its delinquent directors. This, in effect, is such an action. The prevention of that manner of injurious interference which was considered in the Uhlman Case was the purpose which the statute in question designed to effect. The relief sought in that action is not sought in this. The interference there threatened was direct and immediate. If any occur here, it will be casual and unimportant; for this is a suit to benefit, not to injure, an insurance company—to swell, not to diminish, its assets. I do not think the statute is designed to prohibit such beneficial interference as might, perhaps, result herefrom. Besides, that any interference, direct or indirect, will in fact result, is now a mere conjecture. Because it may now be guessed at, as the remote consequence of a decree to follow, should not be a sufficient reason to make of this a bad complaint. Annoyance and inconvenience to the accused directors may follow, but not of necessity any harassment to the society.

To my way of thinking, therefore, the statute in question in no wise prohibits the bringing of this action, and this complaint is not demurrable because of it. The question remains whether the plainiff, irrespective of the statute, enjoys the position of a stockholder in an ordinary business corporation and can maintain an action of the character permitted to such a stockholder. It was said in the Uhlman Case:

"We are convinced, after a careful examination of the character of the relations existing between these parties, that it cannot be said that the defendant (a mutual insurance company) is in any sense a trustee of a particular fund for the plaintiff, or that it acts as to him and in relation to any such fund in a fiduciary capacity: * * * The situation of the parties is that of debtor and creditor simply, the amount of such debt being determinable by this equitable apportionment which, taking the language of the policy

into consideration, necessarily means that the apportionment is to be made by the corporation through its officers.

In support of these statements, the case of Cohen v. New York Mutual Life Ins. Co., 50 N. Y. 610, 10 Am. Rep. 522, is cited. It was held in that case that policy holders in mutual companies did not constitute a partnership which would be dissolved by a state of war. That holding does not affect the question under discussion. In that very case, it was said that policy holders in a mutual company were themselves members of the corporation. "Other and incidental rights are secured to the plaintiff as a member of the corporation only, one of the corporators; but this does not make the members partners as between themselves or affect the express contract of the corporation."

The case of People v. Security Life Insurance Co. & Annuity Co., 78 N. Y. 114, 34 Am. Rep. 522, was also cited. It was there said:

"The fund produced by the payment of all the premiums does not in any sense belong to the policy holders, but belongs exclusively to the company; and the policy holders are interested in it in the same way only that the creditors of any other corporation are interested in its funds."

But in that case the insuring corporation was not a mutual, but a stock company, and that fact was controlling:

"Its business was managed by directors chosen by the stockholders. No policy holder, unless a stockholder, had any voice in any way in the election of its officers or the management of its business. Every policy holder in such a company enters into engagements with the company, and not with any other policy holder."

The case of Bogardus v. New York Life Insurance Co., 101 N. Y. 328, 4 N. E. 522, was also cited. In that case it was held simply that there was no obligation on the part of the insuring company to keep separate and separately invest the premiums paid by the policy holders of a particular class. It was not decided that there was no trust duty imposed upon an insurance company and its directors. It was said:

"It does not enlarge the liability of the defendant to the plaintiff to denominate the relations between them as those of trustee and cestui que trust, because if the defendant had any trust duty to perform in relation to such fund it was expressed in the policy, and was simply to receive, keep, and invest it carefully and prudently, and so as to be able to divide it and its accumulations."

There was, therefore, no sufficient precedent authority for the statement in the Uhlman Case that the relationship between a policy holder and a mutual insurance company was that of debtor and creditor simply, if that statement was intended to be universally applicable. It was at first said in the Uhlman Case that the company was not "a trustee of a particular fund for the plaintiff." It had been so held in the Bogardus Case. Neither is an ordinary business corporation a trustee for a stockholder of the particular fund paid in by him on his stock subscription, so that the same must be separately kept and invested. Nevertheless, an ordinary stockholder has certain rights in the corporate property which are recognized by a court of equity. In the light of all the authorities and the inevitable logic of the situation, it seems to me that the statement in the Uhlman Case, that policy holder and company are merely creditor and debtor, cannot be taken as universally true; nor

do I believe that it was intended to be so taken, but rather as applicable only to the particular circumstances of that case. There the plaintiff's policy had matured. He was no longer a policy holder; no longer a person having a voice or a vote in the management of the corporation. He was not seeking relief in the right of the corporation to compel its proper management and a collection of its assets. He was suing the corporation to collect his claim. The amount of this claim was determinable by his contract, and as a claimant of the corporation he was simply its creditor.

In the Swan Case it was said that the position of a policy holder in an insurance company doing business on the assessment plan was like that of an ordinary stockholder. "Where, as in this case, the complainant is a member of an association formed for the purpose of transacting business of life insurance upon the co-operative or assessment plan, he is to be regarded as an integral part of the corporation. His position is similar to that of a corporator in a corporation." I cannot see that the status of such a policy holder is in any wise different from that of a policy holder in a mutual company, during the term of his policy. In the Greeff Case, the policy holder was denied the right to sue for dividends, on the very ground that his position was analogous to that of a stockholder, who has no right of action for dividends until they have been declared. It seems to me entirely clear that, in a purely mutual company, the whole body of policy holders at any given time, whose policies are not yet mature, have a quasi ownership in all the assets of the corporation, and are, like stockholders of an ordinary corporation, in effect its cestui que trust. The membership changes hourly. Old members go out and new come in; but, unless all the policy holders at a given moment in equity own the corporate property, then we have the extraordinary spectacle of a corporation, without members, without stockholders, a legal fiction, an abstract idea, owning absolutely all corporate property, in trust for no one, with responsibility to no one except creditors and then only to pay debts. This conception of a legal fiction as an absolute owner is not sound. Living persons must be the ultimate owners of all corporate property. In a mutual company they can be none other than the policy holders.

The directors and stockholders of an ordinary corporation are not technically trustees and cestui que trust, nor is it upon any such narrow or technical ground that the right to sue directors in the right of the corporation is given them. "While courts of law generally treat the directors as agents, courts of equity treat them as trustees, and hold them to a strict account of any breach of the trust relation." Bosworth v. Allen, supra. Whatever the nature of a stockholder's interest technically may be, he does, in effect, enjoy rights of ownership in the corporate property; and upon this broad ground a remedy is give him to compel his corporation to collect from its delinquent directors. The nature of a policy holder's interest in a mutual company is very similar to that of any ordinary stockholder. He elects the directors of the corporation. He names the persons who shall manage the corporate property. Upon the proper management thereof depends his ultimate profit. Since he names the managers, he surely has an interest in the corporate funds, and a right to compel proper manage-

ment and the collection of assets diverted, precisely as an ordinary stockholder has that right. I have found it necessary to discuss these questions because this is not alone a stock company, but likewise a mutual company. As a certificate holder, the plaintiff has but a limited interest in the defendant society which has not, perhaps, been affected by the acts charged to have been done. Nevertheless, in one capacity or in the other, the plaintiff is deeply interested in the proper management of the society. She has an interest in its property. She has a voice in naming its management. No person has an interest of a higher nature. She is, in effect, in one capacity or in the other, a cestui que trust, and as such she has a stockholder's right to compel her corporation to collect the assets due it from delinquent directors.

The objection is also made that causes of action are improperly united because the plaintiff alleges that she is a policy holder and also a shareholder. This is not tenable. As a policy holder, the plaintiff may be only a creditor; but as a creditor she states no case for relief and asks none. This is a stockholder's action simply. None other is attempted to be stated or made. In compliance with the authorities cited, the plaintiff has stated the corporate cause of action and that she is a stockholder. In support of the second allegation, she has defined the nature of her stockholding: First, that she owns three shares of stock entitling her to limited dividends; second, that she is a policy holder entitled to dividends for accumulations at the maturity of her policy, in a company organized to do business "upon the mutual plan." The interesting question, whether she is a stockholder by reason of a certificate which can earn only 7 per cent. annually, or by reason of a policy entitled to surplus earnings, is thus avoided. Here are no diverse causes of action. There is but one. It belongs to the corporation. The plaintiff seeks to have it put in motion. By what right? She explains that she is a certificate holder and a policy holder, as both or as either, entitled to corporate earnings, and, as both or as either, a stockholder. If, as either, she is a stockholder, she may maintain the action. That, in one capacity or the other, she is a stockholder, having the rights of an ordinary stockholder to maintain actions in the right of the corporation, has been already explained.

It may be said that the conclusions arrived at conflict with public policy. I do not understand that public policy is necessarily law. It is a topic which generally should affect statesmen, not judges. The public policy of to-day is not the public policy of to-morrow. If followed in judicial decisions, either that which may become bad policy, through a change of conditions, becomes in law a fixed rule, or the law is judicially changed to meet the changing policy, either result being bad. Here is only a legal question. The plaintiff's corporation has a cause of action which it does not enforce. The plaintiff is a shareholder. As such, she has a right to compel its enforcement. The fact that the corporation's business is insurance, not manufacturing, is no valid distinction, differentiating the plaintiff's case from that of an ordinary stockholder. For all the reasons given, therefore, the defendant's demurrer is overruled, with costs.

Demurrer overruled, with costs.