THE PEOPLE *ex rel.* Nellis P. Parkinson, Director of Insurance, Petitioner, *vs.* A. CLAY WILLIAMS, Circuit Judge, *et al.,* Respondents.

*Opinion filed November 21, 1945—Rehearing denied Jan. 17, 1946.*

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of Chicago, of counsel,) for relator.

A. CLAY WILLIAMS, *pro se.*

E. H. GOLDEN, of Petersburg, S. S. DUHAMEL, and CATRON & HOFFMAN, (LACEY CATRON, and INEZ C. HOFFMAN, of counsel,) all of Springfield, for respondents Elmer Boeker, Exr., *et al.*

ECKERT & PETERSON, of Chicago, and GILLESPIE, BURKE & GILLESPIE, of Springfield, (TOM LEEMING, of Chicago, and LOUIS F. GILLESPIE, of Springfield, of counsel,) for respondents Franklin Life Insurance Company *et al.*

Mr. JUSTICE WILSON delivered the opinion of the court:

The People of the State, on the relation of Nellis P. Parkinson, Director of Insurance of the Department of

Insurance, filed an original petition for a writ of *mandamus* directing the defendant, A. Clay Williams, judge of the circuit court of Menard county, to expunge from the records of the circuit court all orders entered in an action in which Elmer Boeker, as executor of the will of John C. Boeker, deceased, and others, are plaintiffs, and the Franklin Life Insurance Company and others are defendants, upon the ground that the orders have been spread of record contrary to section 201 of the Insurance Code. (Ill. Rev. Stat. 1945, chap. 73, par. 813.) The Franklin Life Insurance Company, the First National Bank of Springfield, Elmer Boeker, as executor, Robert F. Kinsella, administrator *de bonis non* with the will annexed of the estate of Richard F. Kinsella, deceased, Helen R. Kinsella, as trustee, Gilbert P. Dikeman, John C. Honey, Eddie Crawford, Henry Abels, Henry Merriam and sixteen other persons have been impleaded as additional defendants in the present cause. Judge Williams, the Franklin Life Insurance Company and the First National Bank of Springfield interposed separate answers to the petition, and Elmer Boeker, in his representative capacity, and five other defendants filed a joint answer. The relator has filed a general and special demurrer to the entire answer of the defendants last mentioned and, also, general and special demurrers to certain portions of the answer. Another answer was filed by fourteen individual defendants. Upon these pleadings, the cause is submitted.

From the pleadings it appears that the Franklin Life Insurance Company is a domestic corporation engaged in the insurance business and subject to the insurance laws of this State. July 23, 1884, the Franklin Life Association was incorporated. On July 5, 1898, the Franklin Life Association was consolidated with the Peoples Life Insurance Company, a mutual legal reserve life insurance company, the new corporation taking the name of the Franklin Life Insurance Company. Thereafter, on July 27, 1910, the Franklin Life Insurance Company was consolidated

with the LaSalle Life Insurance Company, a legal reserve stock corporation and, as the result of this last consolidation, the Franklin Life Insurance Company assumed its present corporate form. On January 11, 1940, John C. Boeker filed a complaint in the circuit court of Menard county against the Franklin Life Insurance Company, the First National Bank of Springfield, and sixteen individuals. The complaint was later amended to include two additional defendants. The consolidated amended complaint is divided into two parts. Paragraphs 1 to 14 narrate the history of the predecessor companies, and show the issuance of a participating policy in the amount of $1000 on February 7, 1900, to John C. Boeker. An amendment to the amended complaint discloses that John C. Honey was added as a plaintiff in part I of the complaint and that, on April 23, 1907, the Franklin Life Insurance Company, the former mutual company, issued a participating policy of insurance for $2000 to him. From July 5, 1898, to July 27, 1910, the predecessor mutual company, the Franklin Life Insurance Company, issued both participating and nonparticipating policies. The allegation is made that those insured under participating policies were entitled to share in the profits accruing to the corporation upon both types of policies. Boeker alleges that he had made all required payments and complied with the conditions prescribed in his policy; that, in 1910, prior to the consolidation of the mutual company, the period of accumulation of profits to be distributed to his policy ended, and that he exercised an option under the policy, drew the accumulated profits in cash, and continued the policy for its full amount as a paid-up participating life policy; that, accordingly, he became and is entitled to share *pro rata* with all other persons holding similar policies in the surplus funds or profits accrued and accruing on the policies issued by the mutual company. Boeker alleges that policies containing like provisions were issued to numerous persons, and that there

are outstanding and in full force approximately 500 policies owned by about 450 persons whose rights are identical or similar to his rights, and that he brings the action in behalf of himself and all such persons so similarly situated. By July 27, 1910, it is alleged that the mutual company had collected and had in its possession profits and surplus from policies amounting to more than $200,000, in which the participating policyholders were and are entitled to share.

Next is set forth the organization of the LaSalle Life Insurance Company in 1909 by certain directors of the mutual company including two of the individual defendants, Henry Abels and Henry Merriam, secretly acting through "dummy" or nominal shareholders. The LaSalle Company was organized to transact an insurance business on the stock plan. The charge is made that the directors secretly acquired, owned and controlled all of the stock interest in the LaSalle Company for the purpose of effecting its consolidation with the mutual company, and thereby acquiring control of the assets and good will of the latter; that these facts were not revealed by the directors to the policyholders of the mutual company, and were not known by them at the time of the consolidation or at any time thereafter until May, 1939. It is further charged the directors and defendants have since falsely represented to the mutual policyholders that other independent persons were the shareholders and owners of the LaSalle company, and that they, the directors and defendants, had no control over the shareholders but were acting and supporting the proposed consolidation solely for the benefit and in the interest of the mutual company and its members, and that the members believed and relied upon the false representations so made. The facts relative to the consolidation of the mutual company (Franklin) with the stock company (LaSalle) and to the defendant stock company in 1910 are recounted in considerable detail. From the complaint it appears that, at the time of the consolidation, the capital

of the LaSalle company was $100,000 and its surplus $5000, and that its capital and surplus together constituted the capital and surplus of the shareholders' interest in the defendant consolidated corporation, and that the shareholders of the latter did not, by the consolidation agreement, acquire any interest in and to the surplus funds or profits then accrued or to accrue in the future on policies issued by the former mutual company prior to the consolidation, and that the policyholders of the mutual company did not acquire any stock in the defendant stock company.

By the consolidation agreement, the defendant Franklin Life Insurance Company assumed all the outstanding contracts, policies, debts, obligations and liabilities of the constituent companies, including all the participating policies issued by the mutual company, and agreed to be bound to the policyholders on the same terms and to the same extent as the mutual company had been bound, and agreed to preserve inviolate all the rights and interests of existing policies of the constituent companies in the surplus funds of the companies, including both the surplus funds then existing and those thereafter accruing, and the defendant consolidated corporation agreed to make distributions from the surplus funds from time to time to the policyholders as the same were by their respective policies entitled, and to keep such records and accounts of the surplus funds and distributions therefrom as might be necessary to carry out the agreements.

The next five paragraphs, 20 through 24 of the complaint, allege violations of the foregoing provisions by the defendant company. In particular, Boeker alleges that the defendant company had appropriated large amounts of the surplus funds of the former mutual company to its own use in the operation of its business for the benefit of its shareholders. It is alleged that by 1915 the total amount of the former mutual company's surplus used by the defendant company "became greater than the capital and sur-

plus constituting the stockholders' interest in said defendant company, and said stockholders' interest became in fact insolvent," and that the business has since then operated by means of the surplus funds arising from the policies issued by the mutual Franklin company prior to the consolidation in 1910. It will be observed that there is no averment that the Franklin company as a whole was ever insolvent, the allegation being, instead, that a particular fund representing the shareholders' interest was insolvent. Wrongful appropriations of large portions of the funds belonging to the participating policyholders for the payment of cash and stock dividends to defendant's shareholders are charged. The names of eighteen shareholders to whom these dividends were illegally and fraudulently paid are set forth. It is alleged that these shareholders had no right to receive such dividends and should be directed to return them to the defendant company for the use of Boeker and others similarly situated.

Beginning with the twenty-fifth paragraph of part I of the complaint, Boeker states an alternative construction of the articles of consolidation and violations of it. The gist of the remaining allegations is that the defendant company was free to employ the surplus funds arising from the business of the former mutual company in the operation of its business, if and so long as it maintained a separate account of the surplus on the old business and recognized the rights and interests of the former mutual policyholders therein and remained willing to administer the account for their benefit. The principal violation alleged in this construction of the consolidation agreement is that the defendant company refuses to recognize any right of the former mutual policyholders in the surplus arising from the nonparticipating policies issued by the mutual company prior to the consolidation. This controversy over the rights in the surplus from the nonparticipating policies is described in considerable length. Specifically, Boeker alleges

that the defendant company agreed to preserve inviolate the rights of holders of participating policies in the surplus funds from all of the policies of the mutual company existing at the time of the consolidation, including both the participating and nonparticipating policies and that, despite this agreement, the defendant company and the defendant shareholders refuse to hold inviolate the rights and interests of the participating policyholders in the surplus funds from the nonparticipating policies issued by the former mutual company.

Other allegations are to the effect that, from the time of the consolidation until 1921, the defendant company failed and neglected to keep any records or accounts showing the surplus funds accruing upon the policies issued by the former mutual company; that, however, in 1921, the defendant company caused an investigation and accounting to be made of the entire business of the company from the consolidation in 1910 to 1921, dividing the business into four funds designated Funds A, B, C, and D, respectively. Of these, Fund A represented the business done on participating policies issued by the mutual company before the consolidation; Fund B, the business done on participating policies issued after the consolidation; Fund C, business done on nonparticipating policies issued before the consolidation, and Fund D, the nonparticipating business issued by the defendant stock company after the consolidation. Boeker alleges that Fund C, at the time of this accounting, showed a large accumulated surplus, and Fund D, representing the nonparticipating business of the defendant company, a large accumulated deficit; that when the defendant company, its officers and shareholders, ascertained these facts, with intent to conceal the surplus existing in Fund C, and its source and, also, other facts brought out in the accounting, they wrongfully caused Funds C and D to be commingled and designated as Fund C in such a manner that neither the Department of Insurance nor the

policyholders of the company could discover the existence of the surplus accrued on nonparticipating policies issued by the former mutual company; that defendants continued to conceal the surplus from the nonparticipating policyholders so that neither Boeker nor any other policyholder learned of the existence of the surplus until 1939 and, hence, did not know, until the year named, that the defendant company, its directors and shareholders were claiming that any part of these surplus funds belonged to them. Additional allegations are to the effect that the surplus from the nonparticipating policies of the former mutual company has accumulated until it amounts to more than $1,800,000, and that this surplus is in addition to proper and adequate reserves held by the defendant company to meet its liabilities on existing policies issued by the mutual company; that the defendant company and its officers, from 1910 on, knew that surplus funds were accumulating and of the rights of Boeker and other policyholders but fraudulently concealed the existence of such surplus and, also, the fact that the defendant company used large portions of the surplus funds for the payment of dividends to its shareholders and in the operation of its business; that the mutual policyholders, including Boeker, did not know of the existence of the surplus funds until 1939 and, consequently, did not consent to or acquiesce in any action of the defendant company in declaring or paying dividends to its shareholders or in using or withholding and concealing the surplus funds from the policies issued by the former mutual company. Concluding allegations of part I of the complaint are that the facts described were brought to the attention of the Department of Insurance but that it failed, although requested so to do, to remedy the wrongs alleged, and that the defendant company likewise refused repeated requests and demands for relief prior to commencing this action.

The relief asked by Boeker and Honey in part I of the complaint is, first, an accounting under the direction of the court to determine (1) what moneys have come into the hands of the defendant company from policies issued by the former mutual company prior to the consolidation in 1910 and (2) what portion thereof is surplus or profits and (3) what portions of such surplus or profits should be paid over to Boeker and those similarly situated, and that the defendant company be directed to pay to Boeker and to each of the other participating policyholders the respective amounts found to be owing them; second, an accounting to determine what portions of the surplus or profits have been wrongfully misappropriated by the defendant company, and that it be ordered to account for all such moneys and to pay over the amount of such appropriations, together with interest thereon; third, a decree that all funds which have accrued on the policies issued by the former mutual company be segregated and held in a special fund for the use and benefit of Boeker and others in the same position, and fourth, relief against the individual shareholders who are charged with having fraudulently received dividends out of the surplus funds belonging to the participating policyholders.

Part II of the complaint will next be considered. Here, we find different plaintiffs and different defendants with the single exception that the Franklin Life Insurance Company is a defendant in both parts I and II. The First National Bank of Springfield, for example, is a defendant only in part II in which Boeker has no interest. The executor of the will of Richard F. Kinsella, Helen R. Kinsella, as trustee, Gilbert P. Dikeman and Eddie Crawford, in behalf of themselves, alleging that they represent separate classes of policyholders, seek relief against the defendant company with respect to each class and touching upon four separate phases of its business. The plaintiffs in part II seek distri-

bution of a security fund created May 1, 1889, in trust with the First National Bank of Springfield as trustee, charging that the proposed distribution is in accordance with the terms of a trustee's contract executed May 1, 1889, and in which certain certificate holders, including Richard F. Kinsella, were beneficiaries, and that the defendant company has maintained and distributed the fund partly for the benefit of persons who formerly held certificates in the old association but who no longer held such certificates. Secondly, an accounting is sought concerning sums due from the defendant company by virtue of assessments and mortuary premiums collected from plaintiffs (in part II) and other certificate holders and an order directing the company to pay such sums to plaintiffs and those they represent; third, a further accounting from the defendant company as to what sums are due by reason of alleged wrongful payments of interest arising from the security fund to persons who had exchanged certificates held by them for legal reserve contracts and, fourth, an accounting as to certain assets originally owned by the Franklin Life Association prior to 1898 and a decree finding all of such sums due from the defendant company to plaintiffs and those they represent.

The parties made defendants to the complaint consistently resisted the assumption of jurisdiction of the cause by the circuit court. Their motions in opposition were overruled from time to time and on April 16, 1942, they were directed to file answers to the complaint. The answers were filed and, on April 27, 1944, the circuit court referred the cause to a special master in chancery to take testimony and report the same, together with conclusions of law and fact.

By the petition for a writ of *mandamus*, allegations are made that the mere taking of evidence under the order of reference will require the transportation of hundreds of thousands of pages of the defendant company's records to

the circuit court of Menard county, necessitating, in turn, the attendance of the executive, administrative and clerical personnel at the master's hearings, and otherwise disrupting the operation of the company to such an extent as not only seriously to interfere with the transaction of its ordinary business but, as gravely, to interfere with the exercise by the Director of Insurance of supervision and superintendence over its affairs, conformably to the Insurance Code; that the granting of all or any part of the relief asked in the complaint would seriously affect, revise, modify and reform the entire capital structure of the defendant company, completely altering its legal rights and liabilities with respect to its policyholders, prevent it from paying or accruing dividends in favor of the persons and to the extent now approved by the Director of Insurance, would recognize and give effect to claims of right to the distribution of funds or accrual of rights to funds in favor of Boeker and other participating policyholders, and would, within the contemplation of section 201 of the Insurance Code, restrain and interfere with the prosecution of the business of the company. From these allegations, the conclusion is reached and stated that, because of the force and effect of section 201, the circuit court of Menard county and Judge Williams are without jurisdiction over the cause to make or enter any order or to do any act other than to enter an order expunging, vacating and dismissing the proceedings.

By its answer, the Franklin Life Insurance Company has joined with the Director of Insurance in seeking the issuance of a writ of *mandamus*. The First National Bank of Springfield is also joining in asking for the relief requested. Fourteen individual defendants also join in the prayer for a writ. By his answer, Judge Williams avers that in the course of settling the pleadings in the action for an accounting it was held, under the facts disclosed, section 201 of the Insurance Code had no application to the

suit, that it did not deprive the circuit court of Menard county of jurisdiction to hear and determine the cause and, conversely, that the facts contained in the pleadings could not have the effect of conferring jurisdiction on the Department of Insurance under section 201 to hear and determine the case. The executor of Boeker's will, John C. Honey, the administrator of Richard F. Kinsella's estate and three others have filed an exhaustive answer. The gist of their answer is that the proceedings instituted and in progress in the circuit court of Menard county are not in contravention of section 201 of the Insurance Code and, in the alternative, if construed so as to bar the action in the circuit court, section 201 would transcend the due-process-of-law guarantees of the Federal and State constitutions, impair the obligations of contracts contrary to section 14 of article II of our constitution and section 10 of article I of the Federal constitution, vest the exclusive jurisdiction over the matter of determining rights under contracts and trusts in the Department of Insurance, thereby depriving the judiciary of its jurisdiction in contravention of article III of our constitution, and, further, by preventing the seeking and granting of the relief sought in the complaint in the circuit court, would grant a special immunity or privilege to the Franklin Life Insurance Company in violation of the prohibition against special legislation contained in section 22 of article IV of the Illinois constitution. The pleadings in the proceeding in this court were completed by the filing of demurrers in behalf of the Director of Insurance.

The decisive issue presented for consideration is whether the proceedings instituted by Boeker in the circuit court of Menard county interfere with the business of the company, within the contemplation of section 201 of the Insurance Code (Ill. Rev. Stat. 1945, chap. 73, par. 813,) which provides: "No order, judgment or decree enjoining, restraining or interfering with the prosecution of the business of

any company, or for the appointment of a temporary or permanent receiver, rehabilitator or liquidator of a domestic company, or receiver or conservator of a foreign or alien company, shall be made or granted otherwise than upon the petition of the Director represented by the Attorney General as provided in this article, except in an action by a judgment creditor or in proceedings supplementary to execution after notice that a final judgment has been entered and that the judgment creditor intends to file a complaint praying for any of the relief in this section mentioned, has been served upon the Director at least thirty days prior to the filing of such petition."

Boeker and Honey, plaintiffs in Part I, and Kinsella, as administrator, and his three coplaintiffs in part II of the complaint, to support their contention that the circuit court of Menard county had jurisdiction of the proceedings in controversy, maintain that neither of the two parts of the complaint will interfere with the prosecution of the Franklin Life Insurance Company's business. Recourse to section 201 discloses that it does not purport to prohibit actions against insurance companies but, instead, prohibits the entry of orders, judgments or decrees of a certain character, namely, those enjoining, restraining or interfering with the prosecution of the business of an insurance company, providing for the appointment of a temporary or permanent receiver, rehabilitator or liquidator of a domestic company, or receiver or conservator of a foreign or alien company. Unless the complaint filed in the circuit court necessarily leads to an order or decree of the character prohibited, the court had jurisdiction to entertain the proceeding. In short, the type of relief sought determines whether the action is prohibited. (*Young v. Equitable Life Assurance Society*, 99 N. Y. Supp. 446.) The precise issue thus presented is whether the decree sought in the circuit court would interfere with the prosecution of the business of the Franklin Life Insurance Com-

pany. The words "interfering with" in section 201 are preceded by the more specific words "enjoining" and "restraining." The three terms employed all relate directly to the prosecution of the business of an insurance company, and refer to a direct interference with the business or system of transacting business with the general public by the company. Whether a particular action does or will interfere with the prosecution of an insurance company's business depends upon many phases of the particular situation and many varied facts, circumstances and conditions, which can only be brought to light upon the trial in each case. Unless it definitely and positively appears from the face of the complaint, without any necessity for resorting to extrinsic evidence, that the action is an interference with the business of the company, the dismissal of the action should not be compelled by *mandamus*. Again, unless the absolute and certain effect of the action and the orders entered therein is an interference with the prosecution of the company's business, there can be no clear and undoubted right to a writ of *mandamus* to compel the expunction of orders entered in the action and the dismissal of the complaint.

It is obvious that section 201 is directed primarily against actions representing a direct effort to obstruct or terminate the prosecution of the company's business with the public, such as *quo warranto* or injunction, and against orders or decrees providing administrative relief in the form of receivership, liquidation or rehabilitation of the company. Indeed, the statute refers expressly to orders for the appointment of a receiver or rehabilitator. The public at large has an interest in the relief granted in such cases. Conversely, section 201 does not assume to restrain the prosecution of actions based upon contractual rights. This section indicates that contract creditors are expected to pursue their contract rights in the courts. Otherwise, the exception and special procedure provided for a judg-

ment creditor by section 201 would be meaningless. As the statute stands, the judgment creditor is permitted "in proceedings supplementary to execution after notice that a final judgment has been entered" to seek and obtain any or all of the relief otherwise prohibited by section 201. Certainly, section 201 does not require actions involving solely contractual rights to be brought by the Director of Insurance represented by the Attorney General. Instead, the manifest legislative intent is that persons having contractual rights may obtain an adjudication of those rights in the courts and reduce them to judgment without applying to the Director of Insurance until after judgment has been rendered and then, if necessary, seek secondary or supplementary relief of the types otherwise prohibited. Reasons for this conclusion suggest themselves. Neither the general public nor the Director of the Department of Insurance has any interest in a construction or determination of primary contractual rights. Moreover, the functions of the Department of Insurance and the Director confirm this conclusion. The Insurance Code qualifies and commands the Director to supervise receiverships, liquidation and rehabilitation proceedings and, further, to enforce the insurance laws by exercising his administrative powers and his administrative discretion.

The determination and enforcement of contract rights are proper matters for disposition in the courts without intervention from the Director, or Department, of Insurance. (*Dale* v. *Hancock County Mutual Life Ass'n,* 363 Ill. 222; *Rowell* v. *Covenant Mutual Life Ass'n,* 176 Ill. 557.) In the *Rowell case,* the plaintiffs sought specific performance of a contract made with the defendant association. Although an injunction was asked against the association to prevent it from proceeding to forfeit plaintiffs' certificate and to restrain the association from making any assessment upon the certificate except in accordance with its terms, this court held that the relief, if granted,

would not constitute a violation of the applicable statute corresponding to section 201. The court pertinently observed, "the act only purports to concern the public regulation, visitation and control of such an association, and not the individual rights of contract." The *Dale case* and *Bastian* v. *Modern Woodmen of America*, 166 Ill. 595, have been recently analyzed in *People ex rel. Benefit Ass'n of Railway Employees* v. *Miner*, 387 Ill. 393, and repetition is unnecessary.

Much of the argument advanced in favor of the issuance of a writ of *mandamus* is that the plaintiffs in the circuit court seek an accounting. It will be observed that actions for accounting are excluded from the purview of section 201 of the Insurance Code. Prior to the adoption of the Insurance Code, the applicable statute forbade the entry of an order, judgment or decree for an accounting unless made upon application of the then Director of Trade and Commerce. (Ill. Rev. Stat. 1935, chap. 73, par. 105(8a).) The exclusion does not mean that an action may be privately prosecuted where an accounting would interfere with the business of the company. (*People* v. *Miner*, 387 Ill. 393.) In the case cited, the court observed, "an accounting may be sought and had, or claim prosecuted, which would in nowise interfere with the business of the company, such as an agent's suit for accounting as to commission; but where the accounting sought is such as clearly interferes with the business of the association, it seems clear that such is still within the purview of section 201 of the Insurance Code." The question with respect to an accounting is thus narrowed to whether the accounting sought in the circuit court would or would not interfere with the business of the Franklin Insurance Company. In *Townsend* v. *Equitable Assurance Society*, 263 Ill. 432, an accounting was granted to a policyholder in a foreign stock company doing business on the mutual plan, this court holding that the plaintiff was a contract creditor

and the accounting would not "interfere with the internal management" of the company. In the present case, according to the complaint in the trial court, the plaintiffs there are contract creditors with well-defined rights in certain surplus funds or profits under the consolidation effected in 1910. If the plaintiffs in the circuit court establish and reduce their rights to a decree they then must pursue the procedure described in the latter part of section 201 if they seek, by supplementary proceedings, any of the enumerated kinds of relief in which the public at large has an interest. In such proceedings the Director of Insurance is given adequate notice, and he may then act, under the authority granted him by section 188 (Ill. Rev. Stat. 1945, chap. 73, par. 800,) so as to administer the affairs of the company to the end of protecting the rights of the public and the policyholders. Prior, however, to obtaining a decree there is nothing for the Director to do in determining the legal nature of the contractual rights in controversy.

The actions in part I of the complaint are based on contract rights under the third paragraph of the articles of consolidation of 1910. The relief sought is enforcement of the contract by requiring the Franklin Life Insurance Company to account for the funds accruing thereunder and, in the alternative, either the payment of the amount found due or the separation of such amount for the benefit of the policyholders entitled thereto under the contract. The agreement, it is alleged, imposed a duty upon the defendant company, its officers and directors, to preserve inviolate the interests of the policyholders of the mutual company in the surplus or profits accruing on the old business. Surely, the enforcement of this provision does not constitute an interference with the company's business. Part I of the complaint also asks that two named individual shareholders, Abels and Merriam, and any others who participated in the consolidation of 1910, be required to account for the money received by them as a result of their alleged fraudu-

lent misrepresentations incident to the consolidation. So far as the complaint against the shareholders is concerned, it is clearly beyond the provisions of section 201.

The Director of Insurance urges, however, that the plaintiffs have alleged that the company itself is insolvent, and it is argued that a decree granting the relief asked would necessarily embody "a judicial pronouncement that the company is insolvent," and that, necessarily, a finding of this insolvency is asked. The allegations of the complaint cannot be distorted in this fashion. The complaint admittedly is based upon several theories. Referring to paragraphs 20 to 24, inclusive, of part I of the complaint, it is alleged that, under the third paragraph of the articles of consolidation, the company was required to keep the surplus funds received from the mutual company separate from the funds received from the defendant stock company. Thus, as is suggested, any use of the former in the operation of the company's business or for the payment of dividends to its shareholders might well constitute a misappropriation. Further, there is no allegation in the complaint that the company, as a whole, was ever insolvent, the material allegation being that the fund representing the shareholders' interest, in contradistinction to the policyholders' interest in the company, was insolvent. Moreover, this allegation cannot be isolated from its context but must be considered with the other allegations in the complaint. When so considered, it appears as only a part of one of several theories set forth in the complaint on which the court might calculate the amounts of money, if any, payable to the policyholders. The dominant theory of Part I is that the Franklin Life Insurance Company was free to use the surplus funds arising from the business of the former mutual company in the operation of its business, if and so long as it maintained a separate account of the surplus on the old business and recognized the rights and interests of the former mutual policyholders therein and remained willing

to administer the account for their benefit. The principal violation charged in this construction of paragraph three of the articles of consolidation is that the defendant company refused to recognize any right of the former mutual policyholders in the surplus arising from the nonparticipating policies issued by the mutual company prior to the consolidation. It thus appears beyond doubt that the primary question presented in part I of the complaint is the construction of the contract contained in the articles of consolidation. The defendant company and its shareholders take one position, and the plaintiffs in part I oppose this construction and seek a judicial construction of the contract to the contrary. The prayer for relief itself discloses the basic purpose of establishing the rights of the plaintiffs in surplus or profits arising from nonparticipating policies issued by the former mutual company. The second paragraph of the prayer for relief differs from the first only in that it is based upon the theory of misappropriations by the company of surplus funds belonging in equity to Boeker and Honey and the policyholders they represent, whereas the first prayer is predicated on the theory that the company still holds the funds which have accrued on the old participation business. The third prayer for relief is an alternative to the first, and the fourth is against the individual shareholders. Although several theories are advanced in part I of the complaint as a basis on which to compute the amount of money to which plaintiffs are entitled, the primary objective of obtaining a determination of the plaintiffs' contractual rights under their policies and the articles of consolidation remains.

The actions stated in part II are based on contract rights set forth in the certificates issued to the plaintiffs in part II and, also, those they represent, by the Franklin Life Association and, in particular, the trustee's contract contained in the certificates. Each of these four separate causes of action are brought to enforce contracts, pursuant

to their terms, by the payment of money alleged to be due thereunder or by the repayment of money charged to have been wrongfully collected from the certificate holders by the Franklin Life Insurance Company or its predecessors. Matters of this character are beyond the discretion of the directorate and managing officers of the defendant insurance company, and the relief requested, if obtained, would not impede the prosecution of its business or in any way interfere with discretionary matters of corporate management. Furthermore, the action in part II for the determination and distribution of the security fund is directed also against the First National Bank of Springfield, an action wholly beyond the purview of section 201 of the Insurance Code. Again, the plaintiffs in part II allege that the bank, as trustee, holds the security fund intact. Manifestly, if these allegations be proved, an accounting is unnecessary, as far as the defendant company is concerned, the relief sought being merely the termination of the security fund and its division among the respective certificate holders.

In an analogous case (*Sanders* v. *Neely*, —— Miss. —, 19 So. 2d 424,) involving the question of whether the provisions of the applicable statute of Mississippi regulating insurance companies and prescribing the duties of the Commissioner of Insurance regarding their examination were intended to abrogate the common-law right of a shareholder in a domestic company to inspect its books and records, the Supreme Court of that State made these pointed observations: "The duty and responsibility of the Commissioner of Insurance is prescribed primarily for the protection of the policyholders and the public, such as approving the form of policies, requiring the deposit of sufficient securities with the State, and such other supervision as is provided for in the interest of policyholders and the public. These statutory provisions were not intended to deal with the relation existing between the insurance corporation and

its stockholders, or to require the Commissioner to concern himself with the internal affairs and details of operation or management. Instead of the Insurance Department having completely occupied the field as to the rights and remedies of the stockholder against his corporation, the statutes governing the duty of the Commissioner in regard thereto barely touch that field, and then only to give the stockholder the right to invoke the aid of the Commissioner when his company has reached a state of unsoundness—a statutory procedure provided for in addition to his common law authority for making an inspection of his own, as an incident to his ownership of stock." Similarly, our Insurance Code does not purport to deprive policyholders of their rights and remedies against insurance companies, particularly where contractual rights are primarily involved. Generally speaking, it is only when "a state of unsoundness" is reached that the rights and remedies of policyholders must yield to the superior authority of the Department of Insurance.

In the petition for *mandamus* and, also, in his brief, the Director of Insurance, analyzing the scope and object of the proceedings in the circuit court, advances seventeen reasons to support the contention that prosecution of the action would interfere with the business of the defendant company. No useful purpose will be served by stating each of these points and the replies thereto. Illustrative is the argument that the action seeks to alter the accounting methods employed by the insurance company for many years with respect to the segregation and distribution of surplus and to compel the company to change its methods of surplus distribution as between various classes of policyholders. An examination of the complaint shows that there is no real quarrel with the defendant insurance company over accounting methods employed by it in its A, B, C and D Fund accounting. So far as an accounting is concerned, the complaint's primary objective is to establish

the rights of plaintiffs to the amount of surplus shown by the accounting as accruing from policies, particularly the nonparticipating policies, issued by the former mutual company. In alleging fraud, plaintiffs are attacking the concealment of the results of the accounting made by the defendant company rather than the results themselves. It follows that the Director's statement that the allegations charging fraudulent accounting practices would necessarily entail complete reconstruction of the company's accounts is without any basis in the complaint. Furthermore, the answer in the present cause points out that the accounting sought in part I of the complaint has already been made by the defendant company and is contained in two named books and the work sheets of the company which are not required in its current operations, and that the accounting required in part II of the complaint will be made from early books and records of the company which obviously are not used in current operations. The Director states that the accounting is not to be between the insurance company and the named plaintiffs but, instead, between the company "and each of the other participating policyholders in whose behalf this suit is brought under each of their policies respectively * * *." The prayer for relief in part I referred to by the Director does not ask an accounting, as stated by him, but is designed rather to obtain from the defendant company an accounting and a judgment for the total surplus on the nonparticipating policies, and, thereafter, in supplementary proceedings, a determination of the extent the policyholders should share in the judgment. The Director says, further, that the validity of the consolidation of 1910 is challenged. This is simply not true. The plaintiffs in the principal action are, instead, relying upon the contract contained in the articles of consolidation. Similarly, the validity of the consolidation effected in 1898 is not assailed despite the Director's statement to the contrary. In declaring that the complaint seeks an accounting

of dividends paid to shareholders over a period of more than thirty years, the Director ignores the fact that the prayer for relief in this regard is directed against individual shareholders and, in consequence, cannot possibly constitute an interference with the prosecution of the insurance company's business.

Our conclusion that the proceedings in the circuit court of Menard county do not interfere with the business of the Franklin Life Insurance Company, within the purview of section 201 of the Insurance Code, renders unnecessary a consideration and disposition of the issues made and argued with respect to the constitutional validity of section 201.

The writ of *mandamus* is denied.

*Writ denied.*