**SCHWARTZ v. KEMPER et al.**

**No. 46C96.**

District Court, N. D. Illinois, E. D.
Oct. 28, 1946.

M. J. Myer, of Chicago, Ill., for plaintiff.

Kirkland, Fleming, Green, Martin & Ellis, of Chicago, Ill., for defendants.

SULLIVAN, District Judge.

Plaintiff, a citizen of New York, as a member and policyholder of Lumbermens Mutual Casualty Company, brings this derivative action against defendants "in the right and for the benefit of Lumbermens," seeking to compel the individual defendants to account to Lumbermens for waste and diversion of its assets.

The complaint sets out that jurisdiction is predicated upon diversity of citizenship and the requisite amount in controversy. That Lumbermens is a mutual insurance company organized under the laws of Illinois. That from 1916 to date James S. Kemper has been its general manager, the chairman of its board of directors, and until recently its president. That Kemper dominates and controls Lumbermens to such an extent that the other directors and officers are subservient to his directions without regard to the best interests of the company. That although Kemper, under these circumstances, owed Lumbermens fiduciary duties of the highest character, he engaged in a systematic course of conduct to enrich himself at the expense of the company, and that his acts of self-dealing are set out in the complaint.

Count one alleges that prior to 1942, Kemper's aggregate compensation was less than $75,000 annually, but that in 1942 he caused his compensation to be increased to more than $250,000 which is over 235%, and that for the years 1943 and 1944 he received compensation on the same scale. That Kemper's increased rate of compensation was excessive and unreasonable because his services from 1942 to 1944 were no greater than his earlier services, nor did the gross earnings or net income of Lumbermens show any marked rise. That other insurance executives in comparable positions did not receive similar increases, and that even the best paid of them received less than one-half of the amount paid to Kemper. That the other members of the Board, acting under Kemper's influence, ratified the increase in his compensations, and that the excess payments to Kemper were unwarranted and should be restored to Lumbermens.

Count two alleges that Kemper, and persons allied with him, own all or the majority of the stock of a corporation known as James S. Kemper & Co., Inc., and that Kemper caused Lumbermens to employ Kemper & Co., as its agent for the transaction of insurance business in various parts of the United States and to pay it substantial commissions and fees. That Lumbermens did not need the services of Kemper & Co. because it had the organization, personnel, equipment, facilities and business connections to carry on its business directly, but that Kemper foisted the services of his personal company on Lumbermens in order to extract the resulting fees and commissions for his own benefit. That Kemper & Co. occupied office space belonging to Lumbermens, and used Lumbermens' organization, personnel, assets and facilities in the conduct of its business but for these benefits it paid no consideration to Lumbermens. That Kemper caused this course of conduct to be carried on and the other members of Lumbermens' Board ratified it out of subservience to Kemper. That

Lumbermens is entitled to an accounting for its damages and Kemper's profits.

Counts three and four allege that at various times from 1927 to 1944 Kemper caused Lumbermens to sell certain securities owned by it to Kemper himself and to persons allied with him. That the sales prices therefor were substantially below the true value of the said securities. That the other defendants, who were members of Lumbermens' Board, approved the sales out of subservience to Kemper, and that Lumbermens is entitled to a refund of the difference between the value of these securities and the prices which it received from Kemper for them.

The complaint prays for judgment requiring the individual defendants to account to Lumbermens for its damages and their profits.

Defendants have filed a motion to dismiss on the ground that the court has no jurisdiction of the subject matter, and the further ground that the complaint fails to state a claim upon which relief can be granted, since under Section 201 of the Illinois Insurance Code, Rev.Stats.1945, Ch. 73, Sec. 813, plaintiff is barred from maintaining this suit.

Section 201 of the Illinois Insurance Code, Rev.Stats.1945, Ch. 73, Sec. 813, provides:

"§ 201. (Rev.Stat.1945, Ch. 73, Sec. 813.) Who May Apply for Appointment of Receiver or Liquidator. No order, judgment or decree enjoining, restraining or interfering with the prosecution of the business of any company, or for the appointment of a temporary or permanent receiver, rehabilitator or liquidator of a domestic company, or receiver or conservator of a foreign or alien company, shall be made or granted otherwise than upon the petition of the Director represented by the Attorney General as provided in this article, except in an action by a judgment creditor or in proceedings supplementary to execution after notice that a final judgment has been entered and that the judgment creditor intends to file a complaint praying for any of the relief in this section mentioned, has been served upon the Director at least thirty days prior to the filing of such petition."

Defendants urge that a judgment granting the relief here sought would be one "interfering with the prosecution of the business of" Lumbermens, and therefore plaintiff has no right, under Section 201 of the Illinois Insurance Code, to bring or maintain the same, because that Section prohibits private individuals from bringing actions which would interfere with the prosecution of the business of an insurance company, and has clothed the Director of Insurance with exclusive visitorial and remedial powers over the matters here complained of.

Plaintiff insists that the instant suit is not against Lumbermens but is in reality in its favor and is against the individual defendants, who compose the Board of Directors of the Company. That these defendants are in control of the company and that Lumbermens is therefore unable to sue the individual defendants or will not bring the suit for an accounting. Under those circumstances equity permits an individual member or policy holder to bring a derivative suit because Lumbermens itself is unable to institute it. In reality, Lumbermens is still the plaintiff and the suit is brought for its benefit.

In the case of Winger v. Chicago City Bank & Trust Co., 394 Ill. 94, 95, 67 N.E. 2d 265, 272, the Supreme Court held:

"A fair interpretation of the statute now in effect indicates that accounting of insurance officials to policyholders, at the suit of the latter, is not prohibited by statute in express language, is not granted to the Director of Insurance, and cannot be held to be prohibited by law unless it interferes with the prosecution of the business of the insurance company. As an abstract proposition we cannot see how a suit by a policyholder to require a director to restore money to an insurance company, which he has diverted from its treasury, can interfere with the transaction of its business. The Insurance Code places upon the Director of Insurance certain specific duties enumerated in the different articles of the statute. It does not forbid an accounting at the suit of others, but only prohibits interference. Necessarily, with the vast number of insurance companies under the jurisdiction of the Direc-

tor of Insurance it could not reasonably be said that he has been given exclusive power over every controversy between the individuals and the directors of the insurance company, but rather that he has certain specific powers and duties, where so stated in the several sections of the act, and also certain general powers, which do not go beyond the general supervision and direction of the administration of the business of insurance, and exclusive powers in case of liquidation or rehabilitation. A statute prohibiting any injunction against any benefit association, except upon application of the Superintendent of Insurance, was held no bar to the right of individual members to bring a suit against the officers of the association, to enjoin acts contrary to the bylaws or articles of the association. Bastian v. Modern Woodmen of America, 166 Ill. 595, 46 N.E. 1090. While there is some difference between that statute and the one invoked by appellants the similarity of the principle involved makes it persuasive authority against them."

Defendants distinguish the Winger case, supra, on the theory that the only question there in dispute was who owned the stock of the stock corporation, an issue which defendants urge did not involve interference with the company's insurance business. My impression of the case is that it not only settled the issue of stock ownership, but also compelled the defendants to account for and restore money and profits received by them, and that this accounting was held not to be barred by Section 201.

The case of Young v. Equitable Life Assurance Soc., 49 Misc. 347, 99 N.Y.S. 446 (affirmed 112 App.Div. 760, 98 N.Y.S. 1052), was cited by the Supreme Court in People ex rel. Parkinson v. Williams, 392 Ill. 224, 64 N.E.2d 464. The Young case was a policyholder's action to compel unfaithful officers of an insurance company to account for excessive salary payments and other profits they had procured through self-dealing with the corporation. There the defendants contended that a New York statute similar to Section 201 of the Illinois Insurance Code barred the suit, and they relied upon Swan v. Mutual Reserve Fund Life Ass'n. 155 N.Y. 9, 49 N.E. 258,

and Greeff v. Equitable Life Ass'n Soc., 160 N.Y. 19, 54 N.E. 712, 46 L.R.A. 288, 73 Am.St.Rep. 659. In deciding the Young case the court said [49 Misc. 347, 99 N.Y. S. 451]:

"The action brought by this plaintiff, however, is not an action by a policy holder to recover upon her policy, as was the case in the Swan and Greeff actions, but a suit to compel the directors of an insurance corporation to pay into the corporate treasury the amount of waste of corporate funds created by them. In this respect the action is totally different from the actions in the two cases mentioned. * * *

"* * * Here no accounting on the part of the corporation is asked. This plaintiff is not in reality antagonistic to her corporation. She is not asking relief or pursuing a claim against it. She is asking only that the corporation obtain recovery for itself from the defendant directors and an accounting from them. Since she demands no accounting from the corporation to herself, no prohibited accounting under the statute is being sought for.

"* * * It does not of necessity follow from this complaint that any order or decree, interfering with the business of the society, will ever result from the maintenance of this action. * * * If an interlocutory judgment for an accounting is granted, the directors, not the society, will account. Any interference resulting will be incidental only. It will not be such an interference with 'the prosecution of the business' of the society, as was under consideration in the Swan and Greeff Cases. * * * 'Prosecution' of business means its continuance. The plaintiffs in those suits sought to prevent a continuance of business along the habitual lines of management adopted. This is no such case. From an interlocutory decree of accounting in this case, no direct interference or stoppage of business can result. It might become necessary, as a consequence, to have reference to the society's books and papers, in order to determine the sums of money which some of the directors have unlawfully received and are owing. But that would be an incidental inconvenience which might occur whenever the society itself sought to collect a debt. It would

arise in actions by the society itself to collect from its delinquent directors. This, in effect, is such an action. * * * If any (interference) occur here, it will be casual and unimportant; for this is a suit to benefit, not to injure, an insurance company—to swell, not to diminish, its assets. I do not think the statute is designed to prohibit such beneficial interference as might, perhaps, result therefrom."

In People ex rel. Parkinson v. Williams, 392 Ill. 224, 64 N.E.2d 464, 474, the complaining policy holders attacked the company's dividend policy extending over a period of thirty years, and sought to compel the recipients of those dividends to restore them to the company. The Director of Insurance contended that such an action violated Section 201. In deciding that case the Supreme Court of Illinois said:

"In declaring that the complaint seeks an accounting of dividends paid to shareholders over a period of more than thirty years, the Director ignores the fact that the prayer for relief in this regard is directed against individual shareholders and, in consequence, cannot possibly constitute an interference with the prosecution of the insurance company's business.

\* \* \* \* \* \*

"It is obvious that section 201 is directed primarily against actions representing a direct effort to obstruct or terminate the prosecution of the company's business with the public, such as quo warranto or injunction, and against orders or decrees providing administrative relief in the form of receivership, liquidation or rehabilitation of the company."

That section 201 is inapplicable to a complaint alleging facts such as those in the case at bar was recognized by the Circuit Court of Appeals for the Second Circuit in the case of Koster v. Lumbermens Mut. Casualty Co., 153 F.2d 888. In the Koster case Lumbermens urged that Section 201 barred the maintenance of the action, and in support thereof cited People ex rel. Benefit Association v. Miner, 387 Ill. 393, 56 N.E.2d 353, which case defendants in the instant case have cited in support of their theory. In deciding the Koster case, the Circuit Court of Appeals for the Second Circuit said [153 F.2d 890]:

"People ex rel. Benefit Association of Railway Employees v. Miner, 387 Ill. 393, 56 N.E.2d 353, certiorari denied, 324 U.S. 840, 65 S.Ct. 586, [89 L.Ed. 1402,] is relied upon by the appellee as indicating that a policyholder cannot bring a derivative action. That case was distinguished, however, in Winger v. Chicago City Bank & Trust Co., 325 Ill.App. 459, 60 N.E.2d 560, 570 which sustained a derivative suit for the recovery of assets."

The Miner case was finally distinguished by the Supreme Court of Illinois when the case of Winger v. Chicago City Bank & Trust Co., supra, was before it, the Supreme Court saying:

"Reliance is placed upon the case of People ex rel. Benefit Ass'n of Railway Employees v. Miner, 387 Ill. 393, 56 N.E. 2d 353. The relief in that case was to require a cancellation of an exclusive agency contract authorized by the directors of the company, and to remove all of the directors, and to cause a new election of directors in their place. Such action might be considered as involving conservation of the company, as the removal of all of its directors and leaving it without managing officers for a time at least would be an interference with the business of the company, but specifically the relief asked would constitute an interference because it prayed that certain agency contracts involving all of its business be declared void, when the Insurance Code provided for the approval of agency contracts by the Director of Insurance. Ill.Rev.Stat.1945, chap. 73, par. 753. It necessarily follows that if the statute gave express authority to the Director of Insurance to approve or reject an agency contract it would not be within the province of the court, at the instance of policyholders, to interfere with the prosecution of the business of the company by setting aside a contract wholly within the jurisdiction of the Director of Insurance."

I find nothing in the Insurance Code which empowers the Director of Insurance to bring an action to compel unfaithful directors to account to the company for their wrong doing, and it would seem to follow that the demand for an accounting upon the directors of Lumbermens in the in-

stant case is not barred by section 201. As the court said in the Winger case, supra:

"It is notable that with all of the different powers, authorities and duties prescribed for the Director of Insurance there is now nothing in the act which requires or authorizes the Director to bring a suit for accounting against delinquent officers or directors on behalf of the policyholders, other than might be inferred from the powers granted under article 13, relating to rehabilitation, liquidation, conservation and. dissolution of companies. In such cases he is given extensive authority, as may be observed upon examination of sections 187 to 210, inclusive, of this article. Ill. Rev.Stat.1945, chap. 73, pars. 799 to 822, incl."

And again the court said:

"In determining whether the cause of action is one that can be brought only by the Director of Insurance it must be observed that while the power vested in him is granted under the police power of the State, still, he may not exercise powers not expressly, or by necessary implication, given him by the statute. This section grants powers in connection with the rehabilitation or liquidation of insurance companies. It does not purport to have anything to do with policyholders or stockholders of a solvent company requiring an accounting, or the doing of any act which will not interfere with the business of a solvent and going insurance company."

Lumbermens is a solvent company and it has not been charged with violating its charter or any of the laws of the State of Illinois. The violations charged in the complaint are those of the individual defendants. The Director of Insurance would therefore have no occasion to institute liquidation or rehabilitation proceedings against Lumbermens. Neither does the Director have any means of compelling the directors of Lumbermens to account to the company for the alleged unfaithful actions which they are charged with having committed. I believe that the policyholders have that right, and that Section 201 does not prevent them from enforcing it. Winger v. Chicago City Bank & Trust Co., supra, was plainly a derivative action brought by the policyholders, and the court did not prevent them from maintaining it because of Section 201.

Defendants' motion to dismiss will be denied, and defendants are given 30 days within which to answer.