Frontier Investment Corporation, an Illinois Corporation, Plaintiff-Appellant, v. Belleville National Savings Bank, a Banking Corporation, Authorized To Do Business in the State of Illinois, Fusz-Schmelzle and Company, a Foreign Corporation Authorized To Do Business in the State of Illinois; Sidney Katz, Frontier Life Insurance Company, an Illinois Corporation (Now Apollo National Life Insurance Company), Joseph C. Hauser, Defendants-Appellees.

Gen. No. 68–113.

Fifth District.

December 15, 1969.

2

Louis G. Davidson, of Chicago, and Meyer & Meyer, of Belleville (Sidney Robin, of counsel), for appellant.

Roberts, Gundlach & Lee, of East St. Louis (Norman J. Gundlach, David H. Bremer, of counsel), Johnson, Ducey & Feder, Sam S. Pessin, of Belleville, Lewis, Rice, Tucker, Allen & Chubb, of St. Louis, Missouri, and Pope & Driemeyer, of East St. Louis, for appellee.

SMITH, J.

The trial court granted a summary judgment in favor of all defendants in the plaintiff's suit for damages arising out of the sale of sixty-three percent of the corporate stock of Frontier Life Insurance Company, which stock was owned by the plaintiff and had been pledged to the defendant bank as security for a loan in the sum of $44,500. Frontier Life Insurance Company (now Apollo National Life Insurance Company) was dismissed out of the suit by stipulation of the parties and is not a party to this appeal.

The note involved was dated June 1, 1966. On June 30, apparently as a result of indictments returned by the St. Clair County Grand Jury charging violation of the Illinois Insurance Code concerning misuse of corporate

funds by certain directors, the defendant bank felt insecure concerning the collateral on the above-mentioned loan and ordered the loan called. On that date, the president of the bank, defendant Joseph C. Hauser, delivered the following notice to plaintiff Frontier Investment Corporation:

"Gentlemen:

"It is with deep regrets, due to circumstances, that I have been instructed to demand payment of your loan of $44,500.00 dated June 1, 1966.

"It is the judgment of our Bank, due to circumstances, that the securities pledged have materially depreciated in value. We expect payment of the principal and interest on or before July 5, 1966.

| "Principal | $44,500.00 |
|---|---|
| "Interest to 7/5/66 | 259.58 |
| | $44,759.58 |

"After the 5th of July, the securities will be sold as per the Pledge of Collateral Agreement signed by your Company on June 1, 1966."

On the date of this letter, the defendant bank in response to inquiries as to the market price of the life insurance company stock had received statements from three different brokers stating that as of that date there was no market for the stock. The record further discloses that during the day of July 5, the plaintiff through its officers made various abortive efforts to make payment of the obligation due to the defendant bank without success.

After the close of banking hours on July 5, the bank's executive committee met to discuss the failure to receive payment of the loan. At 3:00 p. m. the bank's president received a call from the defendant broker advising of a firm bid of $.35 a share for the stock. This was refused

4

because it did not satisfy the total loan and interest. Immediately thereafter, the same broker advised that it had a bid of $.39 a share, good until 3:30 p. m. on July 5, 1966. The sale at this price was confirmed and the certificates delivered to the broker. Thereafter the broker advised that the defendant Sidney Katz was the purchaser of the stock.

It appears that defendants John Robbins, Earl Butterfield, Charles Gibson, and Sam Miller were directors of both Frontier Investment Corporation and Frontier Life Insurance Company. It also appears that John Robbins was vice president of Frontier Investment Corporation and president of Frontier Life Insurance Company. At 11:45 p. m. on July 5, the plaintiff deposited a bank draft in the night depository box of the defendant bank, together with a letter demanding the return of the pledged collateral insurance stock. On July 8, Frontier Investment Corporation filed a complaint seeking only injunctive relief to restrain the bank, the broker, Katz, and the life insurance company from completing the sale of the stock to the defendant Katz. This temporary injunction was denied following a hearing on July 11, and leave granted to the plaintiff to file additional pleadings. On the same day, Katz filed a suit for the appointment of a receiver for the life insurance company charging the directors with mismanagement, asked for the termination of the directorships of Robbins, Butterfield, Gibson, and Miller, the election of new directors and the issuance of the stock to himself. The four named individuals, individually and as members of the board of directors of the insurance company, joined issues in this suit, moved to vacate the appointment of the receiver and objected to every act of the receiver. The motion to vacate was denied. A special shareholders' meeting was held on July 28, and defendant Katz and one Ogden, Slayton, and Chase were elected as directors of the insurance company. Upon presentation of the stock to the

5

receiver, duly endorsed, the receiver caused a new certificate for 117,100 shares of the life insurance stock to be issued to Sidney Katz. The work of the receiver having been concluded and over the specific objections of the four named individuals to "approval of an order of this court ordering the transferring of 117,100 shares of stock of the Frontier Life Insurance Company, which is owned and belongs to the Frontier Investment Corporation," the court found in paragraph (c) of its order that "the actions of the receiver as to the reissuance of said certificate for 117,100 shares to Sidney Katz be and the same are hereby approved." The receiver was discharged. No appeal was taken from this order.

It is the position of the plaintiff that (1) the court originally had no jurisdiction to appoint a receiver and that any acts of such receiver or orders of the court approving the receiver's conduct are void, unenforceable, and are not a bar to the instant action, (2) that in any event the receivership proceeding did not decide any issues presented in the present complaint and did not determine the rights or obligations of the parties to the action now before the court and (3) that the orders in the receivership proceeding did not purport to deal with the "disposition" of the collateral by the defendant bank to Katz and hence did not hold that that disposition was commercially reasonable.

██ ██ The plaintiff contends that the receivership proceeding is a nullity for the reason that § 201 of the Insurance Code, Ill Rev Stats 1967, c 73, § 813, holds in substance that no action interfering with the prosecution of the business of an insurance company may be brought except upon the application of the director of insurance and that the instant suit brought by an alleged stockholder did not confer jurisdiction. In support of this contention, plaintiff cites People v. Niehaus, 356 Ill 104, 190 NE 349; People v. Miner, 387 Ill 393, 56 NE2d 353; Korman v. Matthias, 32 Ill App2d 341, 177 NE2d 720;

6

People v. Peoria Life Ins. Co., 357 Ill 486, 192 NE 420. We cannot agree that the proceeding in the Katz suit and the appointment of the receiver is a nullity or that such proceeding is not a judicial proceeding. In People v. Williams, 392 Ill 224, 238, 64 NE2d 464, 470, the Supreme Court indicated that § 201 was primarily concerned with interfering with, obstructing or terminating the insurance company's business and stated:

> ". . . Conversely, section 201 does not assume to restrain the prosecution of actions based upon contractual rights. . . ."

And again in Winger v. Chicago Bank & Trust Co., 394 Ill 94, 67 NE2d 265, the Supreme Court distinguished between interfering with the conduct of the business and requiring a duty on the part of its officers. In discussing § 201, it stated it does not purport to have anything to do with policyholders or stockholders of a solvent company requiring an accounting or the doing of any act which will not interfere with the business of a solvent and going insurance company. The appointment of the receiver in the Katz case in no sense purports to invoke an area where the director has exclusive jurisdiction. In fact, the four individuals on motion complain that the injunction restrains them from "wasting, from improperly disbursing, from misapplying and concealing any of the assets wherever situated of said Frontier Life Insurance Company." It is clear that such an injunction order seeks only to enforce a compliance with a fiduciary obligation already imposed by law upon the directors of the insurance company. It does not interfere with the prosecution of the insurance company's business. If it restrains the prostitution of the insurance business, it is a strange litany for directors of that business to be chanting such a protest in this lawsuit. The appointment of the receiver in this instance was an interlocutory order which was appealable. The individual directors who were

7

partially and in part charged with the responsibility as directors to protect and defend their insurance company did not appeal the order. As directors of the insurance company, they were apparently satisfied to let the order stand. In that same proceeding, they attacked the validity of the transfer of the stock to Katz. They then changed hats and put on their hats as officers and directors of the investment company; the heads are the same, but the hats are different. Appealable under Rule 307 of the Supreme Court Rules, the individual directors did not seek to take an appeal or to question the appointment of the receiver or his actions. Instead, now representing the investment company, they seek to relitigate the same question and to hold the proceeding in which they had previously engaged was not a judicial proceeding. We cannot agree with the plaintiff that the receivership proceeding was a nullity.

██ Since the plaintiff was not a party to the receivership proceeding, the investment company takes the position that its rights were not affected and that nothing was there adjudicated which now binds them. This position, in our judgment, overlooks some very cogent factors. The Uniform Commercial Code, Ill Rev Stats 1967, c 26, § 9–507 (2), reads in part:

> ". . . A disposition which has been approved in any judicial proceeding or by any bona fide creditors' committee or representative of creditors shall conclusively be deemed to be commercially reasonable, but this sentence does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not so approved is not commercially reasonable."

We agree with the plaintiff that the doctrine of res adjudicata and estoppel by verdict applies only to issues

8

actually litigated where the second action is based upon a different cause of action. In Harding Co. v. Harding, 352 Ill 417, 427, 186 NE 152, 155, the court stated:

". . . In such cases the inquiry must always be as to the point or question actually litigated and determined in the original action, the burden of proof is on him who invokes the estoppel, and extrinsic and parol evidence is admissible to prove that the precise question in the second case was raised and determined in the first."

Section 9-504(3) provides "Sale . . . may be . . . at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." Was this issue determined either in the application for temporary injunction in this suit or in the receivership which directed the transfer of the stock to the defendant Katz? Not necessarily. Since the plaintiff or those in privity with the plaintiff did not appeal from either of these orders and now stands on a suit for damages, it is clear that under § 9-504(4) the disposition by the secured party transferred to Katz, the purchaser, for value all of the plaintiff's rights in the stock and establishes that such transfer was made after default and that the purchaser acted in good faith. These two propositions are not subject to further litigation.

██ Under § 9-507(1) where, as here, disposition has occurred, the debtor has a right to recover from the secured party any loss occasioned by a failure of the secured party to comply with the provisions of the Act. Section 9-507(2) provides that if the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current at such market at the time of his sale or if he has

otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold in a reasonably commercial manner. This same section further provides "disposition which has been approved in any judicial proceeding . . . shall conclusively be deemed to be commercially reasonable. . . ." This quoted portion, however, as stated in the same section "does not indicate that any such approval must be obtained in any case nor does it indicate that any disposition not. so approved is not commercially reasonable." Thus the approval need not be obtained at all, need not be obtained in advance nor is there anything in the Act that requires the secured party to do so. Such language is simply not there.

We have not been favored with too much of the proceeding in the receivership matter and cannot say with any degree of certainty that that proceeding determined the question of whether or not the disposition was commercially reasonable. However, it is to be noted that the trial court denied the motion to strike the complaint in this case, but allowed the motion for summary judgment. We would also observe that the testimony of witnesses as to the details of this transaction was taken in this case on the hearing for the temporary injunction. That evidence was before the court in this proceeding and is a part of the case. It relates the facts and the circumstances shown by this record. It shows the "method, manner, time, place and terms of the disposition of the stock." There was no dispute of fact. There was a question of law. Couple this with the fact that the receivership proceeding is a judicial proceeding and that proceeding approved the transfer of the stock to the purchaser. There was no appeal from that order. It is not necessarily a contradiction in itself to hold that the method, manner, time, place and terms of disposition were not in accordance with the statute and thus the defendants are liable for damages and in the same breath hold

10

that the transfer of the stock in a suit brought by the purchaser is proper. The purchaser of the stock is protected by the statute irrespective of whether or not the disposition was commercially reasonable so long as he purchases after default and acts in good faith. However, it is clear from this record that there was no dispute of a material fact. By the approval of the transfer of the stock to Katz and by the entry of the summary judgment, the trial court determined that the disposition of the stock was commercially reasonable as a matter of law. Such conclusion is not contrary to the uncontroverted facts in this record and the judgment must be affirmed. It is so ordered.

Affirmed.

CRAVEN, P. J. and TRAPP, J., concur.