**STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPANY and Wendy L. Gramm, Appellants,**

**v.**

**Alicia LOPEZ, Adan Munoz, Jr., Juan Llanes, Diana Moreno, and Albert Alaniz, Appellees.**

**No. 13–99–814–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 1, 2001.

Rehearing Overruled May 3, 2001.

Gary L. Gurwitz, Atlas & Hall, McAllen, John J. McKetta III, Graves, Dougherty, Hearon & Moody, Austin, for appellants.

Katie Pearson Klein, Dale & Klein, William D. Mount, Jr., Dale & Klein, L.L.P., McAllen, Ramon Garcia, Edinburg, Adam Poncio, Law Offices of Cerda & Poncio, San Antonio, Roy S. Dale, Dale & Klein, McAllen, for appellees.

Before Justices HINOJOSA, RODRIGUEZ, and CHAVEZ.[1]

## OPINION

Opinion by Justice HINOJOSA.

This is an interlocutory appeal from the trial court's order certifying a class.[2] Appellees, Alicia Lopez, Adan Munoz, Jr., Juan Llanes, Diana Moreno and Albert Alaniz, sued their automobile insurance carriers, State Farm Mutual Automobile Insurance Company, an Illinois corporation, ("State Farm") and State Farm County Mutual Automobile Insurance Company, a Texas corporation,[3] and their directors, alleging the companies wrongfully failed to pay adequate dividends to their policyholders although they amassed huge corporate surpluses. In three issues, appellants, State Farm and Wendy L. Gramm, contend the trial court abused its discretion when it certified the class because: (1) the court lacks jurisdiction; (2) appellees have pleaded no viable cause of action, and thus have not met the typicality requirement for class certification; and (3) the class representatives cannot fairly and adequately protect the interests of the class because past and present policyholders have antagonistic interests. We affirm.

### A. THE LAWSUIT

In their Third Amended Petition, appellees allege that in 1997 State Farm reported a "surplus as regards policyholders" of over $37 billion, a dramatic increase from its 1996 reported surplus of some $7.5 billion, but that State Farm returned only "insignificant amounts" of the surplus to its policyholders in the form of dividends. Appellees claim this constitutes a malicious suppression of dividends. Appellees also allege a cause of action for breach of contract based on language common to all State Farm policies that a policyholder:

is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

Appellees allege State Farm has breached its contract with its policyholders by failing to pay dividends, or by paying insufficient dividends. Appellees also assert a cause of action for fraud, alleging that State Farm knowingly made material and false representations to its policyholders in the policies that State Farm would pay dividends out of corporate surplus "that was just and equitable in accordance with applicable law," and that State Farm maliciously suppressed dividends, which "is akin to a breach of trust." Alternatively, appellees contend State Farm committed fraud: (1) by breaching a fiduciary duty owed to its policyholders; (2) by misrepresenting that dividends might be paid, but pricing automobile insurance on the as-

---

**1.** Retired Justice Melchor Chavez, assigned to this Court by the Chief Justice of the Texas Supreme Court pursuant to TEX.GOV'T CODE ANN. § 74.003 (Vernon 1998).

**2.** A party may complain of all matters pertaining to a class action certification by interlocutory appeal. TEX.CIV.PRAC. & REM .CODE ANN. § 51.014(a)(3); *Central Power & Light Co. v.*

*City of San Juan,* 962 S.W.2d 602, 607 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.).

**3.** State Farm County Mutual Automobile Insurance Company is not a party to this appeal.

sumption that dividends would not be paid; (3) by concealing material facts from its policyholders by failing to adequately disclose policyholders' right to dividends, amount of surplus held, and policyholders' voting rights; and (4) by agreeing to pay dividends but failing to properly do so.

Appellees prayed that State Farm be ordered to pay reasonable dividends for past years and "annually hereafter," as well as pre-judgment and post-judgment interest, attorney's fees and costs.

## B. THE TRIAL COURT'S ORDER

The trial court's order is brief. It grants appellees' motion for class certification and defines the class as:

all persons and entities who are or had been policyholders of vehicle casualty policies issued by State Farm Mutual Automobile Insurance Company in the State of Texas during the years 1994, 1995, 1996, 1997, 1998, and 1999 and up to the time of trial.

The order contains no ruling as to which state's law is to be applied in the case.

## C. STANDARD OF REVIEW

■■■ It is well established that a trial court has broad discretion in determining whether to grant or deny class certification. *Entex v.. City of Pearland,* 990 S.W.2d 904, 909 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *Union Pac. Resources Co. v. Chilek,* 966 S.W.2d 117, 120 (Tex.App.—Austin 1998, pet. dism'd w.o.j.). A class certification order will be reversed only if the record shows a clear abuse of discretion. *General Motors v. Bloyed,* 916 S.W.2d 949, 955 (Tex.1996); *FirstCollect, Inc. v. Armstrong,* 976 S.W.2d 294, 298 (Tex.App.—Corpus Christi 1998, pet. dism'd w.o.j.); *Chilek,* 966 S.W.2d at 120; *Central Power & Light Co. v. City of San Juan,* 962 S.W.2d 602, 607 (Tex.App.—Corpus Christi 1998, pet. dism'd w.o.j.). A

trial court abuses its discretion if it acts arbitrarily, unreasonably or without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985); *Entex,* 990 S.W.2d at 909; *FirstCollect,* 976 S.W.2d at 298.

A trial court also abuses its discretion when it fails to properly apply the law to undisputed facts, or when its ruling is based on factual assertions not supported by material in the record. *Texas Commerce Bank Nat'l Ass'n v. Wood,* 994 S.W.2d 796, 801 (Tex.App.—Corpus Christi 1999, pet. dism'd); *Hi–Lo Auto Supply, L.P. v. Beresky,* 986 S.W.2d 382, 386 (Tex.App.—Beaumont 1999, writ mand. denied). On appeal, the reviewing court must view the evidence in the light most favorable to the trial court's ruling and indulge every presumption in favor of that ruling. *Wood,* 994 S.W.2d at 801; *Entex,* 990 S.W.2d at 908; *FirstCollect,* 976 S.W.2d at 299. In applying this standard, the reviewing court must defer to the trial court's factual determinations, so long as they are properly supported by the record, while reviewing its legal determinations *de novo. Entex,* 990 S.W.2d at 909; *Remington Arms Co., Inc. v. Luna,* 966 S.W.2d 641, 643 (Tex.App.—San Antonio 1998, pet. denied).

## D. JURISDICTION OF THE TRIAL COURT

■■ In their first issue, appellants complain the trial court lacks jurisdiction to hear this case. They contend that because State Farm is a mutual insurance company incorporated under the laws of Illinois, Illinois law applies to the case. Appellants argue that according to Illinois law, only the Illinois Attorney General, at the behest of the Illinois Insurance Director, may bring an action such as this.

Appellants assert that article 8.02 of the Texas Business Corporation Act requires

that Illinois law must be applied in this case. That statute provides:

 A. A foreign corporation which shall have received a certificate of authority under this Act shall ... enjoy the same rights and privileges as a domestic corporation organized for the purposes set forth in the application pursuant to which such certificate of authority is issued; and, as to all matters affecting the transaction of intrastate business in this State, it and its officers and directors shall be subject to the same duties, restrictions, penalties, and liabilities now or hereinafter imposed upon a domestic corporation of like character and it officers and directors; *provided, however, that only the laws of the jurisdiction of incorporation of a foreign corporation shall govern (1) the internal affairs of the foreign corporation, including but not limited to the rights, powers, and duties of the board of directors and shareholders and matters relating to its shares,* and (2) the liability, if any, of the shareholders of the foreign corporation for the debts, liabilities, and obligations of the foreign corporation for which they are not otherwise liable by statute or agreement.

TEX.BUS.CORP.ACT ANN. art. 8.02, § A (Vernon Supp.2001) (emphasis added). Appellants argue that because it is an Illinois corporation and this lawsuit pertains to the internal affairs of the corporation (the declaration of dividends by its board of directors), Illinois law should apply. Appellants contend that section 5/201 of the Illinois Insurance Code (chapter 215 of the Illinois Compiled Statutes) provides that only the Illinois Attorney General, at the request of the Illinois Director of Insurance, can bring such a cause of action. That statute provides:

§ 201. Who may apply for appointment of receiver or liquidator. No order or judgment enjoining, restraining or interfering with the prosecution of the business of any company, or for the appointment of a temporary or permanent receiver, rehabilitator or liquidator of a domestic company, or receiver or conservator of a foreign or alien company, shall be made or granted otherwise than upon the complaint of the Director represented by the Attorney General as provided in this article, except in an action by a judgment creditor or in proceedings supplementary thereto after notice that a final judgment has been entered and that the judgment creditor intends to file a complaint praying for any of the relief in this section mentioned, has been served upon the Director at least 30 days prior to the filing of such complaint by such judgment creditor.

215 ILL.COMP.STAT. 5/201 (West 1998).

Appellants' reliance on article 8.02, however, is misplaced. Article 8.02 applies only to those corporations that "have received authority under" the Texas Business Corporation Act, and insurance companies are explicitly excluded from the Act. Article 2.01 of the business corporation act provides:

 B. No corporation may adopt this Act or be organized under this Act or obtain authority to transact business in this State under this Act:

 \* \* \* \* \*

 (4) If any one or more of its purposes is to operate any of the following:

 \* \* \* \* \*

 (d) insurance companies of every type and character that operate under the insurance laws of this State,

and corporate attorneys in fact for reciprocal or inter-insurance exchanges[.]

TEX.BUS.CORP.ACT ANN. art. 2.01, § B (Vernon Supp.2001).

We now review the Texas Insurance Code, which governs the business of insurance in Texas. "Both [the Texas Supreme Court] and the United States Supreme Court have consistently recognized the right of the states to regulate the insurance industry in its operations affecting the public welfare." *Mid–American Indem. Ins. Co. v. King*, 22 S.W.3d 321, 326–27 (Tex.1995); *State v. State Mut. Life Assurance Co. of Am.*, 163 Tex. 240, 353 S.W.2d 412, 416 (Tex.1962). Chapter fifteen of the insurance code governs "Mutual Insurance Companies Other Than Life." TEX.INS CODE ANN. art. 15.06 (Vernon Supp. 2001) ("Any company organized under the provisions of this chapter is empowered and authorized to write any kinds of insurance, which may lawfully be written in Texas, except life insurance."). State Farm is a mutual insurance company offering non-life insurance policies.

Appellants argue that article 2.18 of the insurance code makes article 8.02 of the Texas Business Code applicable here, and that Illinois law should apply. Article 2.18 states, "The laws governing corporations in general shall apply to and govern insurance companies incorporated in this State in so far as the same are not inconsistent with any provision of this Code." TEX.INS. CODE ANN. art. 2.18 (Vernon 1981).

Several provisions of the Texas Insurance Code appear to be inconsistent with the application of the general corporation laws of the Texas Business Corporation Act. Chapter 21 of the insurance code contains "General Provisions" applicable to all insurance companies doing business in Texas. TEX.INS.CODE ANN. art. 21.01–21.81 (Vernon 1981 & Vernon Supp.2001). Arti-

cle 21.42, entitled "Texas Laws Govern Policies," provides:

Any contract of insurance payable to any citizen or inhabitant of this State by any insurance company or corporation doing business within this State shall be held to be a contract made and entered into under and by the virtue of the laws of this State relating to insurance, and governed thereby, notwithstanding such policy or contract of insurance may provide that the contract was executed and the premiums and policy (in case it becomes a demand) should be payable without this State, or at the home office of the company or corporation issuing the same.

TEX.INS.CODE ANN. art. 21.42 (Vernon 1981). Appellees have asserted causes of action for breach of contract and fraud in the contract. In order for article 21.42 to apply, the insurance proceeds must be payable to a Texas citizen, the policy must be issued by a company doing business in Texas, and the policy must arise in the course of the insurance company's Texas business. *Hefner v. Republic Indem. Co. of Am.*, 773 F.Supp. 11, 13 (S.D.Tex.1991) (citing *Howell v. Am. Live Stock Ins. Co.*, 483 F.2d 1354 (5th Cir.1973) and *General Am. Life Ins. Co. v. Rodriguez*, 641 S.W.2d 264, 267 (Tex.App.—Houston [14th Dist.] 1982, no writ)). These conditions are all satisfied in this case.

■ Assuming, *arguendo*, that article 2.18 requires the application of Illinois law in this case, we disagree with appellants' interpretation of section 5/201 of the Illinois Insurance Code. A fair interpretation of section 5/201 indicates that accounting of insurance officials to policyholders, at the suit of the latter, is not prohibited by the statute in express language, is not granted to the Illinois Director of Insurance, and cannot be held to be prohibited by law unless it interferes with the prosecution of

the business of the insurance company. *Winger v. Chicago City Bank & Trust Co.*, 394 Ill. 94, 67 N.E.2d 265, 272 (1946). Section 5⁄201 is primarily concerned with interfering with, obstructing or terminating the insurance company's business and does not assume to restrain the prosecution of actions based upon contractual rights. *Frontier Inv. Corp. v. Belleville Nat'l Sav. Bank*, 119 Ill.App.2d 2, 254 N.E.2d 295, 298 (5th Dist.1969). The determination and enforcement of contract rights are proper matters for disposition in the courts without intervention from the Illinois Director of Insurance. *People ex rel. Parkinson v. Williams*, 392 Ill. 224, 64 N.E.2d 464, 471 (1945). Section 5⁄201 is directed primarily against actions representing a direct effort to obstruct or terminate the prosecution of the company's business with the public, such as *quo warranto* or injunction, and against orders or decrees providing administrative relief in the form of receivership, liquidation or rehabilitation of the company. *Parkinson*, 64 N.E.2d at 470. We conclude that section 5⁄201 of the Illinois Insurance Code does not preclude private citizens from bringing this type of suit against an Illinois insurance company.

We hold the trial court has jurisdiction over this suit. We decline to determine whether Texas or Illinois law should apply in this case because this matter was not fully presented to the trial court, and the trial court made no ruling on this issue. We overrule appellants' first issue.

### E. GENERAL REQUIREMENTS FOR CLASS CERTIFICATION

Class action suits furnish an efficient means for numerous claimants with a common complaint to obtain a remedy where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages. *Bloyed*, 916 S.W.2d at 952–53 (*citing Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980)). Class actions also facilitate the spreading of litigation costs among numerous litigants with similar claims. *Bloyed*, 916 S.W.2d at 952–53 (*citing U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 403, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980)). However, even though it is an efficient device, there is no right to litigate a claim as a class action; Texas Rule of Civil Procedure 42 provides only that the court may certify a class action if the plaintiff satisfies the requirements of the rule. *Ford Motor Co. v. Sheldon*, 22 S.W.3d 444, 452–53 (Tex.2000)(citing *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 647 (Tex.App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.), *mand. denied*, 951 S.W.2d 394 (Tex.1997)). The class action format must not unduly restrict a party from presenting viable claims or defenses without that party's consent. *Southwestern Refining Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex.2000) (citing TEX.R.CIV.P. 815 and TEX.GOV'T CODE § 22.004(a)(Vernon Supp.2001) (state procedural rules may not abridge, enlarge, or modify the substantive rights of a litigant)). The class action device is not meant to alter the parties' burden of proof, right to a jury trial, or the substantive prerequisites to recovery. *Bernal*, 22 S.W.3d at 437.

A member of a class may sue or be sued as a representative party of the class only if all of the following requirements of Texas Rule of Civil Procedure 42(a) are satisfied:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

TEX.R.CIV.P. 42(a). Additionally, at least one of the enumerated requirements set forth in Texas Rule of Civil Procedure 42(b) must be met. In this case, appellees pleaded rules 42(b)(1)(A), 42(b)(1)(B) and/or 42(b)(4), which provide:

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

\* \* \* \* \*

(4) the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

TEX.R.CIV.P. 42(b)(4).[4]

▮▮▮▮ The trial court is charged with the initial task of identifying the substantive law issues and determining whether the character and nature of the class satisfies the requirements of class action. *FirstCollect*, 976 S.W.2d at 299; *Central Power & Light*, 962 S.W.2d at 608; *Rio Grande Valley Gas Co. v. City of Pharr*, 962 S.W.2d 631, 640 (Tex.App.—Corpus Christi 1997, pet. dism'd). The plaintiffs' right to proceed as a class may be established by materials which need not meet all the requirements of admissibility at trial. *Wood*, 994 S.W.2d at 801; *Health & Tennis Corp. of Am. v. Jackson*, 928 S.W.2d 583, 587 (Tex.App.—San Antonio 1996, writ dism'd w.o.j.); *Vinson v. Texas Commerce Nat'l Bank Ass'n*, 880 S.W.2d 820 (Tex.App.—Dallas 1994, no writ); *Dresser Indus., Inc. v. Snell*, 847 S.W.2d 367, 376 (Tex.App.—El Paso 1993, no writ).

### F. TYPICALITY

By their second issue, appellants contend the trial court erred in finding that the claims of the purported class members were typical of the class claims because "on the face of the pleadings and on the

**4.** The certification order does not specify which of these sections it found to be satisfied.

undisputed facts, [appellees] have no viable cause of action."

■ Generally, the typicality requirement mandates that the class representatives possess the same interests and suffer the same injury as the class. *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Chilek*, 966 S.W.2d at 121; *Dresser Indus.*, 847 S.W.2d at 373. Before an action may be certified, the representatives must demonstrate that their claims and defenses are typical of the claims and defenses of the class members. *See* TEX.R.CIV.P. 42(a)(3). The class representative must not have interests antagonistic to those of the rest of the class. *Hi–Lo Auto Supply*, 986 S.W.2d at 388; *Central Power & Light*, 962 S.W.2d at 609.

■ The class representative need not suffer precisely the same injury as the other class members, but there must be a nexus between the injury suffered by the representative and the injuries suffered by the other class members. *Rainbow Group*, 990 S.W.2d at 358; *Hi–Lo Auto Supply*, 986 S.W.2d at 387; *Chilek*, 966 S.W.2d at 121. To be typical, the representative's claims must arise from the same event or course of conduct giving rise to the claims of other class members and must also be based on the same legal theories. *Hi–Lo Auto Supply*, 986 S.W.2d at 387; *FirstCollect*, 976 S.W.2d at 301. Claims need not be identical or perfectly coextensive, just substantially similar. *Cedar Crest Funeral Home, Inc. v. Lashley*, 889 S.W.2d 325, 331 (Tex.App.—Dallas 1993, no writ). Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. *Dresser Indus.*, 847 S.W.2d at 373.

■ After the parties filed their briefs, and shortly before oral argument in this case, the Texas Supreme Court issued its opinion in *Bernal*. The court stated:

> [c]ourts must perform a "rigorous analysis" before ruling on class certification to determine whether all prerequisites to certification have been met. Although it may not be an abuse of discretion to certify a class that could later fail, we conclude that a cautious approach to class certification is essential.

*Bernal*, 22 S.W.3d at 435 (citations omitted). Appellants argue that this language requires the trial court to examine the merits of the case before granting certification, and requires the reviewing court to make the same analysis.

We do not agree with appellants' interpretation of *Bernal*. There are several procedural mechanisms with which a defendant may properly challenge the viability of a plaintiff's causes of action. *See, e.g.*, TEX.R.CIV.P. 91 (special exceptions) and TEX.R.CIV.P. 166a (summary judgment). However, in deciding whether to certify a class, a trial court is not to determine the merits of the suit. *Henry Schein, Inc. v. Stromboe*, 28 S.W.3d 196, 210 (Tex.App.—Austin 2000, no pet.); *Tana Oil & Gas Corp. v. Bates*, 978 S.W.2d 735, 741 (Tex.App.—Austin 1998, no pet.). We do not believe *Bernal* has changed this rule.

The "rigorous analysis" required by *Bernal* is set in the context of analyzing whether the predominance requirement of Texas Rule of Civil Procedure 42(b)(4) was met for a class of plaintiffs alleging they received personal injuries from an explosion of a refinery tank. *Bernal*, 22 S.W.3d at 435. The plaintiffs in *Bernal* had varying exposures, injuries and preconditions that lead the court to conclude that individual issues would predominate over commons ones in the class. *Id.* at 436.

In this case, appellants have not challenged the class certification on commonal-

ity or predominance of common issues grounds and, in fact, could not reasonably do so because appellees' claims spring from identical language in the policies, and from the same actions or non-actions by the State Farm board of directors. To interpret the "rigorous analysis" requirement of *Bernal* as mandating an evaluation of the ultimate merit of appellees' claims at the class certification hearing would be stretching the holding of *Bernal* far beyond what we believe the supreme court intended.

 To meet the requirements of typicality, it is enough that the claims raised by the class representatives are essentially identical for each class member. In the instant case, the claims asserted by each class member are based on: (1) the virtually identical language in each class member's State Farm automobile insurance policy; and (2) the same actions of the company (a) in setting its rates so as not to declare a dividend and (b) in failing to declare a dividend, or declaring an inadequate dividend.

We hold the trial court did not abuse its discretion in finding typicality. We overrule appellants' second issue.

### G. ADEQUATE REPRESENTATION

In their third issue, appellants contend the trial court erred in finding adequate representation because the interests of present State Farm policyholders and past State Farm policyholders are antagonistic, since past policyholders will be interested in receiving as large a dividend as possible, while current policyholders have an interest in maintaining a larger corporate surplus to cover claims and, thus, an interest in receiving smaller dividends.

 The class representative must fairly and adequately protect the interest of the class members. TEX.R.CIV.P. 42(a)(4). They must not have interests antagonistic to those of the rest of the class. *Hi–Lo Auto Supply,* 986 S.W.2d at 388; *Central Power & Light,* 962 S.W.2d at 609. Adequacy is a question of fact and must be determined by reference to the individual circumstances of each case. *Entex v. City of Pearland,* 990 S.W.2d 904, 915 (Tex.App.—Houston [14th Dist.], no pet.); *Forsyth v. Lake LBJ Inv. Corp.,* 903 S.W.2d 146, 150 n. 6 (Tex.App.—Austin 1995, writ dism'd w.o.j.). Because questions of the adequacy of representation are left to the trial court's discretion, the trial court does not abuse its discretion by basing its decision on controverted evidence. *Hi–Lo Auto Supply,* 986 S.W.2d at 388; *Microsoft Corp.,* 914 S.W.2d at 615.

 The requirement of adequacy of representation has two prongs: (1) it must appear that the representatives, through their attorneys, will vigorously prosecute the class claims; and (2) there must be an absence of antagonism or conflict between the representative's interest and those of the class. *Graebel/Houston Movers, Inc. v. Chastain,* 26 S.W.3d 24, 32 (Tex.App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.); *Sun Coast Resources v. Cooper,* 967 S.W.2d 525, 538 (Tex.App.—Houston [1st Dist.] 1998). Factors affecting this determination include the following: (1) counsel's adequacy; (2) potential conflicts of interest; (3) the plaintiff's personal integrity; (4) the representative's familiarity with the litigation and his belief in the grievance's legitimacy; (5) whether the class is unmanageable, based on geographic limitations; and (6) whether the plaintiff can afford to finance the class action. *Sun Coast Resources,* 967 S.W.2d at 539; *Forsyth v. Lake LBJ Inv. Corp.,* 903 S.W.2d at 151. Speculative claims regarding potential conflicts are insufficient to show the trial court abused its discretion in finding representativeness. *Employers Cas. Co. v. Texas Ass'n of School Boards Workers' Compensation Self–Ins. Fund,* 886 S.W.2d 470, 475 (Tex.App.—Austin 1994, writ dism'd w.o.j.). Such

claims must be evidenced in the record. *E. & V. Slack, Inc. v. Shell Oil Co.*, 969 S.W.2d 565, 568 (Tex.App.—Austin 1998, no pet.). Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. *Dresser Indus.*, 847 S.W.2d at 373; *Adams v. Reagan*, 791 S.W.2d 284, 291 (Tex.App.—Fort Worth 1990, no writ).

■ We have reviewed the record in this case and find no evidence of any actual antagonism between the class representatives (who are all present policyholders) and class members who are past policyholders. The only evidence cited by appellants in support of their claim of antagonism is testimony at the certification hearing from appellants' own expert witness, a State Farm actuary, who testified that the amount of money available for distribution to shareholders in each year would be reduced upon calculation and payment of a dividend for the previous year. The witness testified:

Q. And just to inform the Court what you testified to at your deposition was that the dividends are based on the end-of-term premiums; is that correct?

A. Yes, that's correct.

Q. Which is the formula I was referring to is [sic] if you determine that a ten percent dividend should be given, then what they do is take the end-of-term premium, calculate it by that ten percent, and that is what the benefit or return is to the policyholder; is that correct?

A. That's correct with one—as I sat there and heard you describe that here this afternoon, there are some rather large complications to that because if you start in 1994 with policyholders and somehow determine that a different dividend should have been paid in 1994, that changes what you had looking at 1995. And if you then redo that again in '95, that changes what you look at in '96; and then that would recalculate all the numbers and then you would look at that again in 1997, recalculate all the numbers and look at that in 1998. So I don't think you can just look at 1998 without considering that there may be something if you are going to go back retroactive that would affect prior years.

Q. The Court can go back and look at all those years of this class certification if necessary, wouldn't you agree?

A. Yes. So I assume you would get fairly complicated. You have to know the ending-term premium for policyholders in 1994, calculate some amount, subtract that from the policyholder protection fund, redo whatever needs to be done to calculate what's in 1995, determine what the ending-premiums were in 1995 for three million policyholders, multiply that, redo everything. Now you got three million more ending-term premiums to calculate what would be the ending amounts from that. So there would be a lot of calculations to be done.

Q. That's why we hire expensive experts.

This testimony does not conclusively establish antagonism between past and present policyholders. The witness merely testified that the calculation of a dividend for a particular years' policyholders would depend in part upon the amount distributed to the policyholders of previous years. This certainly would have been true had State Farm actually paid a dividend in each of those years. Furthermore, the policyholders for each year will have to show that State Farm wrongfully failed to pay a proper dividend under the facts and

circumstances of each year. Obviously, the facts and circumstances that will determine whether or not a dividend should have been paid by State Farm in 1994 will have to be determined before those of 1995, and the facts and circumstances surrounding the propriety of the payment of a dividend for 1995 will have to be determined before the data for 1996 can be analyzed, and so on. We conclude this is not a conflict that goes to the subject matter of the litigation that will defeat a party's claim of representative status. *See Dresser Indus.,* 847 S.W.2d at 373; *Adams,* 791 S.W.2d at 291.

We hold the trial court did not abuse its discretion in finding that the class would receive adequate representation from the named class representatives. Should evidence of such antagonism be adduced in the future, the trial court may address the issue by creating subclasses if appropriate. Tex.R.Civ.P. 42(d). We overrule appellants' third issue.

We affirm the trial court's order granting class certification.